**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
WHEELING DIVISION**

BROOKE COUNTY COMMISSION; HANCOCK
COUNTY COMMISSION; HARRISON COUNTY
COMMISSION; LEWIS COUNTY
COMMISSION; MARSHALL COUNTY
COMMISSION; OHIO COUNTY COMMISSION;
TYLER COUNTY COMMISSION; and WETZEL
COUNTY COMMISSION,

                *Plaintiffs*,

     v.

PURDUE PHARMA L.P.; PURDUE PHARMA
INC.; THE PURDUE FREDERICK COMPANY,
INC.; MARK RADCLIFFE; MARK ROSS;
PATTY CARNES; TEVA PHARMACEUTICALS
USA, INC.; CEPHALON, INC.; JANSSEN
PHARMACEUTICALS, INC.; ORTHO-MCNEIL-
JANSSEN PHARMACEUTICALS, INC., n/k/a
Janssen Pharmaceuticals, Inc.; JANSSEN
PHARMACEUTICA, INC., n/k/a Janssen
Pharmaceuticals, Inc.; JOHNSON & JOHNSON;
ENDO HEALTH SOLUTIONS INC.; ENDO
PHARMACEUTICALS, INC.; ALLERGAN plc;
ACTAVIS plc; ACTAVIS, INC.; ACTAVIS, LLC;
ACTAVIS PHARMA, INC.; WATSON
PHARMACEUTICALS, INC.; WATSON
PHARMA, INC.; WATSON LABORATORIES,
INC.; MCKESSON CORPORATION; CARDINAL
HEALTH, INC.; AMERISOURCEBERGEN
DRUG CORPORATION; RITE AID OF
MARYLAND, INC.; KROGER LIMITED
PARTNERSHIP II; CVS INDIANA, L.L.C.; WAL-
MART STORES EAST, LP; GOODWIN DRUG
COMPANY; WEST VIRGINIA BOARD OF
PHARMACY; DAVID POTTERS; EDITA P.
MILAN, M.D.; TRESSIE MONTENE DUFFY,
M.D.; EUGENIO ALDEA MENEZ, M.D.; SCOTT
JAMES FEATHERS, D.P.M.; and AMY LYNN
BEAVER, P.A.-C,

                *Defendants*.

ELECTRONICALLY
FILED
Jan 18 2018
U.S. DISTRICT COURT
Northern District of WV

Civil Action No. __5:18-cv-9__ (Bailey)

Judge: _____

## NOTICE OF REMOVAL

PLEASE TAKE NOTICE that, pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, Defendants McKesson Corporation; Cardinal Health, Inc.; and AmerisourceBergen Drug Corporation (collectively, the "Removing Defendants"), hereby remove this civil action from the Circuit Court of Marshall County, West Virginia, to the United States District Court for the Northern District of West Virginia.  As grounds for removal, the Removing Defendants state as follows:

### I.          NATURE OF REMOVED ACTION

1.          On December 13, 2017, Plaintiffs Brooke County Commission, Hancock County Commission, Harrison County Commission, Lewis County Commission, Marshall County Commission, Ohio County Commission, Tyler County Commission, and Wetzel County Commission ("Plaintiffs"), filed a Complaint in the Circuit Court of Marshall County against the Removing Defendants, joining as additional defendants Rite Aid of Maryland, Inc.; Kroger Limited Partnership II; CVS Indiana, L.L.C.; and Wal-Mart Stores East, LP (collectively with the Removing Defendants, the "Distributor Defendants"); the West Virginia Board of Pharmacy ("Board") and David Potters, its former Executive Director (the "Board Defendants"); Edita P. Milan, M.D., Tressie Montene Duffy, M.D., Eugenio Aldea Menez, M.D., Scott James Feathers, D.P.M., and Amy Lynn Beaver, P.A.-C (the "Medical Defendants"); Purdue Pharma L.P.; Purdue Pharma Inc; The Purdue Frederick Company, Inc.; Teva Pharmaceuticals USA, Inc.; Cephalon, Inc; Janssen Pharmaceuticals, Inc.; Ortho-McNeil-Janssen Pharmaceuticals, Inc., n/k/a Janssen Pharmaceuticals, Inc.; Janssen Pharmaceutica, Inc., n/k/a Janssen Pharmaceuticals, Inc.; Johnson & Johnson; Endo Health Solutions Inc.; Endo Pharmaceuticals, Inc.; Allergan plc; Actavis plc; Actavis, Inc; Actavis, LLC; Actavis Pharma, Inc.; Watson Pharmaceuticals, Inc.; Watson Pharma, Inc; and Watson Laboratories, Inc. (the "Manufacturing Defendants"); Mark

Radcliffe; Mark Ross; and Patty Carnes (the "Purdue Sales Representatives"); and Goodwin Drug Company ("Goodwin").  The circuit court assigned the case consecutive Civil Action Nos. 17-C-248 through 17-C-255.

2.      In accordance with 28 U.S.C. § 1446(a) and Rule 5.01(c) of the Local Rules of General Practice and Procedure, a copy of the docket sheet and a copy of all process, pleadings, and orders served upon the Removing Defendants in the state court action are attached hereto as **Exhibit A**.

3.      On December 5, 2017, the Judicial Panel on Multidistrict Litigation created a Multidistrict Litigation ("MDL") in the Northern District of Ohio that would include this case and the many others like it, *i.e.*, cases in which "cities, counties and states . . . allege that . . . distributors failed to monitor . . . and report suspicious orders of prescription opiates."  *In re Nat'l Prescription Opiate Litig.*, MDL No. 2804, Doc. 328 (Dec. 5, 2017 Transfer Order) (attached as **Exhibit B**).  Several virtually identical cases have already been transferred to the MDL.

## II.      COMPLIANCE WITH REMOVAL STATUTE

4.      This Notice of Removal ("Notice") is properly filed under 28 U.S.C. § 1441(a) in the United States District Court for the Northern District of West Virginia, Wheeling Division, because Marshall County is in this federal judicial district and in this division.  This Notice is signed pursuant to Rule 11 of the Federal Rules of Civil Procedure.

5.      The Removing Defendants were served with the Complaint on December 19, 2017.  In accordance with the requirements of 28 U.S.C. § 1446(b), this Notice is timely filed within thirty (30) days after service.  *See Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 354–56 (1999) (holding that 30-day removal period begins to run upon service of summons and complaint).

6.     The Removing Defendants will promptly file a copy of this Notice with the clerk of the Circuit Court of Marshall County and serve notice of this filing on Plaintiffs, as required by 28 U.S.C. § 1446(d).

7.     The Removing Defendants join in this Notice and consent to removal.  28 U.S.C. § 1446(b)(2)(A); *Mayo v. Bd. of Educ.*, 713 F.3d 735, 742 (4th Cir. 2013); *Weirton Med. Ctr., Inc. v. Trinity Health Sys., Inc.*, No. 5:14CV87, 2014 WL 5305982 (N.D. W. Va. Oct. 15, 2014). The additional Distributor Defendants have provided their consent as acknowledged by their signatures below.  As discussed below, consent by the Board Defendants, Medical Defendants, Manufacturing Defendants, Purdue Sales Representatives, and Goodwin is not required because they are fraudulently joined or misjoined.  *See Shaffer v. Nw. Mut. Life Ins. Co.*, 394 F. Supp. 2d 814, 819 (N.D. W. Va. 2005) ("[F]raudulently joined defendants are not required to consent to a co-defendant's notice of removal." (citing *Fleming v. United Teacher Assocs. Ins. Co.*, 250 F. Supp. 2d 658, 663 (S.D. W. Va. 2003)).  To the extent that the consent of the Manufacturing Defendants is required, they have provided their consent as acknowledged by their signatures below.  The Removing Defendants' Rule 7.1 Disclosure Statements will be filed promptly.

### III.     DIVERSITY JURISDICTION EXISTS

8.     Removal of this case is proper under 28 U.S.C. §§ 1441 and 1332 because complete diversity exists between Plaintiffs and all properly joined defendants.

9.     Plaintiffs are political subdivisions of the State of West Virginia, while the Distributor Defendants are citizens of states other than West Virginia.  *See* Complaint[1] ¶¶ 1, 26, 32, 37, 41, 43, 45, 47; *S.C. Dep't of Disabilities & Special Needs v. Hoover Universal, Inc.*, 535

---

[1]     References herein to specific portions of the Complaint exclude numbered paragraphs 1-56 of its fifteen-page Introduction, indicating instead the paragraphs subsequent thereto, which Plaintiffs have renumbered to begin again with Paragraph 1.

F.3d 300, 303 (4th Cir. 2008) ("It is well established that for purposes of diversity jurisdiction . . . an entity created by the State which functions independently of the State with authority to sue and be sued, such as . . . a political subdivision of the State, can be a 'citizen' for purposes of diversity jurisdiction."); *see also Moor v. Alameda Cnty.*, 411 U.S. 693, 717 (1973) ("[I]t is well settled that for purposes of diversity of citizenship, political subdivisions are citizens of their respective States . . . ."). Thus, complete diversity exists between Plaintiffs and the Distributor Defendants.

10.     Upon information and belief, Mr. Potters, the Medical Defendants, Goodwin, and Defendants Mark Radcliffe, Mark Ross, Patty Carnes (who are, upon information and belief, sales representatives who are or were employed by Defendants Purdue Pharma L.P., Purdue Pharma Inc., and/or The Purdue Frederick Company, Inc.) are citizens of West Virginia, and the Board is either a citizen of West Virginia or an arm of the State of West Virginia without citizenship for purposes of diversity jurisdiction. *See Moor*, 411 U.S. at 717. The citizenship of those defendants should be disregarded, however, insofar as they were fraudulently joined and/or misjoined solely to defeat diversity. *See Johnson v. Am. Towers, LLC*, 781 F.3d 693, 704 (4th Cir. 2015) ("[T]he fraudulent joinder doctrine 'effectively permits a district court to disregard, for jurisdictional purposes, the citizenship of certain non-diverse defendants, assume jurisdiction over a case, dismiss the non-diverse defendants, and thereby retain jurisdiction.'") (quoting *Mayes v. Rapoport*, 198 F.3d 457, 461 (4th Cir. 1999)). "'Fraudulent joinder' is a term of art, [and] it does not reflect on the integrity of plaintiff or counsel . . . ." *AIDS Counseling & Testing Ctrs. v. Grp. W Television, Inc.*, 903 F.2d 1000, 1003 (4th Cir. 1990).

11.     A defendant is fraudulently joined if "there is no possibility that the plaintiff would be able to establish a cause of action against the in-state defendant." *Johnson*, 781 F.3d at 704; *Conrad v. Ocwen Loan Servicing, LLC*, No. 1:17cv53, 2017 WL 3185142, at *3 (N.D. W.

Va. July 26, 2017); *see Weidman v. Exxon Mobil Corp.,* 776 F.3d 214, 218 (4th Cir. 2015) (finding fraudulent joinder because plaintiff "cannot succeed in any of his claims against the non-diverse defendants").

12.   Alternatively, the related doctrine known as fraudulent or procedural misjoinder also "provides an exception to the complete diversity rule." *Zirkle v. Valley Forge Ins. Co.*, No. 1:15CV82, 2015 WL 4729327, at *3 (N.D. W. Va. Aug. 10, 2015).  The doctrine recognizes "'that claims against certain defendants, while provable, have no real connection to the claims against other defendants in the same action and were only included to defeat diversity jurisdiction and removal.'"  *Id.* (quoting *Wyatt v. Charleston Area Med. Ctr., Inc.*, 651 F. Supp. 2d 492, 496 (S.D. W. Va. 2009)); *see Tapscott v. MSDealer Serv. Corp.*, 77 F.3d 1353, 1360 (11th Cir. 1996) (affirming district court's decision to sever and remand non-diverse defendants where plaintiffs sued two separate classes of defendants on separate claims such that joinder of both classes was fraudulent and did not defeat diversity jurisdiction); *Hughes v. Sears, Roebuck & Co.*, No. 2:09-CV-93, 2009 WL 2877424 (N.D. W. Va. Sept. 3, 2009) (Bailey, J.) (severing plaintiff's claims against a doctor related to misdiagnosis from her claims for injuries from a fall against manufacturer and vendor of treadmill because her claims were not part of same transaction or occurrence).

13.   To sustain joinder under the federal rules, the claims must:  (1) arise out of the same transaction or occurrence; **and** (2) involve a question of law or fact common to all defendants.  *See Zirkle*, 2015 WL 4729327, at *3 ("[T]he concept of misjoinder requires nothing more than an analysis of permissive joinder pursuant to Fed. R. Civ. P. 20(a)(2)." (citation omitted)).

14.     *First*, the Board Defendants are fraudulently joined in this action because Plaintiffs' claims against them are barred by the qualified immunity doctrine and/or the public duty doctrine.

15.     Under West Virginia law, the Board, a state agency, and its employees, have qualified immunity from precisely the kind of claims Plaintiffs allege here.  *See W. Va. Bd. of Educ. v. Marple*, 783 S.E.2d 75, 81 (W. Va. 2015) ("[Qualified immunity] preserves the freedom of the State, its agencies, and its employees to deliberate, act, and carry out their legal responsibilities within the limits of the law and constitution."); *W. Va. Reg. Jail & Corr. Facility Auth. v. A.B.*, 766 S.E.2d 751, 766 (W. Va. 2014); *Clark v. Dunn*, 465 S.E.2d 374, 380–81 (W. Va. 1995) (concluding "the doctrine of qualified or official immunity bars a claim of mere negligence against the Department of Natural Resources, a state agency"); *W. Va. Dep't of Health & Human Res. v. Payne*, 746 S.E.2d 554, 565–66 & n. 29 (W. Va. 2013) (stating that "qualified immunity insulates the State and its agencies from liability based on vague or principled notions of government regulation," and acknowledging qualified immunity of state agencies tasked with licensing responsibilities is necessary because otherwise "such public bodies could be made co-defendants in the majority of tort actions arising from the licensed or permitted private conduct"); *see also Ortega v. Young Again Products, Inc.*, 548 Fed. App'x 108, 111 (5th Cir. 2013) (affirming the district court's denial of a motion to remand on the basis that an attorney was fraudulently joined because state law provided qualified immunity for her alleged conduct).[2]

---

[2]     Further, W. Va. Code §30-5-5(o) provides that "[t]he members of [the Board] when acting in good faith and without malice shall enjoy immunity from individual civil liability while acting within the scope of their duties as board members."

16.     The Complaint asserts claims against the Board with respect to acts or omissions in the scope of the Board Defendants' duties as a state agency and employees.  Compl. ¶¶ 776–794.  In short, the Complaint asserts that the Board Defendants should have done a better job as regulators.  Though Plaintiffs have made cursory allegations against the Board Defendants of "malicious" conduct, their allegations of malice are unsupported by any facts or reasonable inferences derived therefrom.  It is simply not plausible, upon any fair reading of the Complaint, to conclude that the Board Defendants acted in bad faith and with malice to cause the injuries complained of by Plaintiffs.

17.     Plaintiffs' claims are also plainly barred by West Virginia's common-law doctrine of qualified immunity.

18.     The West Virginia Supreme Court of Appeals has consistently held that state agencies and the officials involved are "absolutely" immune from "a cause of action that arises from judicial, legislative, executive or administrative policy-making acts or omissions."  *A.B.*, 766 S.E.2d at 766.  Even agency conduct that does not rise to the level of these policy-making functions is still immune if it involves a matter that is left to the agency's discretion, and does not violate "a clearly established statutory or constitutional right of which a reasonable person would have known or are otherwise fraudulent, malicious, or oppressive."  *Marple*, 783 S.E.2d at 84.

19.     Plaintiffs' claims against the Board Defendants are clearly barred by qualified immunity because they are based on alleged acts or omissions that involve judicial, legislative, executive, and/or administrative policy making, namely, *inter alia*, the allegedly negligent licensing of distributors, pharmacies and manufacturers, *see* Compl. ¶¶ 787–789, and the allegedly negligent failure to investigate "suspicious order" reports, *id.* ¶¶ 783–785, 790.

20.     Even if any of Plaintiffs' claims against the Board Defendants could be characterized as challenging anything other than that agency's policy-making functions, the Board Defendants would still be immune from the claims because the claims are all based on conduct within its discretion, rather than on any statutory or regulatory directive that requires it to perform a ministerial act that is "so well prescribed, certain, and imperative that nothing is left to the public official's discretion."  *Payne,* 746 S.E.2d at 565 n.26.

21.     The public duty doctrine also protects the Board Defendants from claims that they breached a non-discretionary duty owed to the public at large.  *See W. Va. State Police v. Hughes*, 796 S.E.2d 193, 199 (W. Va. 2017).  The public duty doctrine confirms that the Board Defendants cannot be held liable for allegedly breaching "their duties to protect Plaintiffs." Complaint ¶¶ 777, 787.  The licensing and regulatory enforcement scheme that Plaintiffs assert the Board Defendants violated does not create any duties owed to specific individuals or political subdivisions.

22.     Plaintiffs also cannot establish their claims against the Board in the Marshall County state action because, in light of Plaintiffs' requested relief, Marshall County is not a proper venue.  Claims against a state agency may be brought only in the circuit court of Kanawha County.  *See* W. Va. Code §14-2-2 ("Any suit in which . . . a state agency is made a party defendant, except as garnishee or suggestee [ ] shall be brought and prosecuted **only** in the circuit court of **Kanawha County**."  (emphases added)).

23.     Notwithstanding that the Supreme Court of Appeals of West Virginia has held that the mandatory venue statute does not apply "[w]here a cause of action is, in essence, a suit against a state agency's insurance carrier," *Pittsburgh Elevator Co. v. West Virginia Bd. of Regents*, 310 S.E.2d 675, 689 (W. Va. 1983), the referenced exception does not apply here. Although Plaintiffs' claim for damages against the Board is limited to its available insurance

coverage, they have also alleged that all defendants — including the Board — have contributed to an ongoing public nuisance.  Because Plaintiffs seek abatement of the nuisance, *see* Complaint ¶ 820, they necessarily are pursuing direct injunctive relief against the Board.  Plaintiffs' multifaceted action is therefore not merely a suit against the Board's insurance carrier for money, but a suit that seeks mandatory, coercive injunctions directing the Board to act in a particular way with respect to its official duties and responsibilities as a State agency.  The suit thus falls squarely within the mandatory venue provision of § 14-2-2, and it may be maintained, if at all, only in Kanawha County.  Plaintiffs' attempted bypass of the mandatory venue provision highlights that the Board is fraudulently joined in this action.

24.     ***Second***, the Board Defendants are also fraudulently misjoined in this action because the claims, as pleaded, do not arise out of the same "act, transaction, or occurrence" as the claims pleaded against the Distributor Defendants.  While the Board Defendants bear great responsibility for the regulation of prescription medications, Plaintiffs do not plead sufficient connection between their allegations against the Distributor Defendants and their allegations against the Board Defendants.

25.     The claims against the Distributor Defendants relate to their asserted noncompliance with statutory requirements to report suspicious orders, which allegedly caused them to distribute too much of certain prescription medications to pharmacies in the eight Plaintiff counties.  *See, e.g.*, Complaint ¶¶ 760–65.  Plaintiffs' claims against the Board Defendants, by contrast, focus on their alleged failure to enact, enforce, and oversee regulations concerning diversion of controlled substances by registrants.  *See*, *e.g., id.* ¶¶ 787–90.

26.     Although distributors, as registrants, are subject to regulations to protect against diversion while they have custody of controlled substances (*i.e.*, physical security requirements), Plaintiffs do not allege that the Distributor Defendants permitted diversion while they had

controlled substances in their warehouses or in transit.   Plaintiffs' allegations against the Distributor Defendants instead involve the volume of controlled substances they lawfully distributed to licensed pharmacies, where the prescription medications sat on the shelf until dispensed by licensed pharmacists.   In contrast, Plaintiffs' allegations against the Board Defendants concern their alleged inaction that purportedly led to the diversion of controlled substances by licensed pharmacies or by persons who obtained controlled substances from pharmacies.

27.   In summary, Plaintiffs' claims against the Distributor Defendants do not involve the same transaction or occurrence as their claims against the Board Defendants, and the two sets of claims share no common questions of fact or law.   The claims therefore do not meet the standard for joinder imposed by Federal Rule of Civil Procedure 20.   For the same reasons, the Board Defendants are not indispensable parties under Rule 19.   *See Ashworth v. Albers Med., Inc.*, 395 F. Supp. 2d 395, 411 & n.12 (S.D. W. Va. 2005).

28.   Even assuming that Plaintiffs have viable claims against the Board Defendants (which, as set forth above, they do not), the allegations supporting those claims "are legally and factually distinct from the allegations against" the Distributor Defendants, such that any connection between the two sets of allegations is too remote to sustain joinder.   *Hughes*, 2009 WL 2877424, at *6.   Hence, "the defendant's right of removal should prevail over that of permitting a plaintiff's choice of forum."   *Id.* at *5 (citation omitted).   The Court should therefore sever the claims against the Board Defendants "so as to preserve [the Removing Defendants'] right to removal in the remaining action and to preserve the interests of judicial expediency and justice."   *Id.* at *7.

29.   ***Third***, the Medical Defendants are fraudulently joined in this action because they have not been properly notified under West Virginia's Medical Professional Liability Act

("MPLA").  The MPLA requires plaintiffs, prior to filing an action against a health care provider, to serve the provider with a pre-suit notice of claim.  W. Va. Code § 55-7B-6 ("At least thirty days prior to the filing of a medical professional liability action against a health care provider, the claimant shall serve by certified mail, return receipt requested, a notice of claim on each health care provider the claimant will join in litigation.").  The notice of claim must include a statement of all theories of liability supporting any cause of action, a list of health care providers and facilities to which notices are being sent, and "a screening certificate of merit." *Id.* § 55-7B-6(b).

30.     The certificate of merit is an affidavit submitted "by a health care provider qualified as an expert" in accordance with the West Virginia Rules of Evidence.  § 55-7B-6(b). The certificate must set forth the expert's qualifications and "state with particularity" his or her opinion regarding the applicable standard of care, how that standard was breached by the provider, and how the breach caused the plaintiff's injuries.  *Id.*  A plaintiff may forgo the certificate-of-merit requirement only if "the cause of action is based upon a well-established legal theory of liability which does not require expert testimony supporting a breach of the applicable standard of care," in which case it is sufficient to "file a statement specifically setting forth the basis of the alleged liability of the health care provider."  *Id.* § 55-7B-6(c).

31.     It appears from the Complaint that the notice of claim served on the Medical Defendants contained no screening certificate of merit.  *See* Complaint ¶ 809 (alleging service of a lay statement conforming only to the requirements of subsection 6(c)).  Yet Plaintiffs allege that the Medical Defendants "deviated from acceptable standards of care by," among other things, prescribing and dispensing regulated drugs outside "accepted medical standards," *id.* ¶ 810(b), prescribing those drugs in amounts "excessive under accepted and prevailing medical practice standards," *id.* ¶ 810(c), and prescribing them while knowing they were likely to be used

"other than medicinally or for an accepted therapeutic purpose," *id.* ¶ 810(d).  Of course, the medical standards applicable to the prescription of such drugs to begin with, to the amounts that may prescribed in a particular medical circumstance, and for what therapeutic purposes are each subject to being established solely by expert medical testimony; none are susceptible to proof under a "well-established legal theory of liability."

32.     Plaintiffs' Complaint thus demonstrates their non-compliance with the MPLA. *See Motto v. Correctional Med. Servs.*, 2007 WL 2897854, at *5 (S.D.W. Va. Sep. 27, 2007) ("Compliance with W. Va. Code § 55-7B-6 is mandatory prior to filing suit in federal court."); Memorandum Opinion and Order, *Cnty. Comm'n of McDowell Cnty. v. McKesson Corp.*, ECF No. 70, No. 1:17-00946 (S.D. W. Va., July 3, 2017) ("McDowell County Order"), at 7 ("If this requirement is not met, the case must be dismissed." (*citing Stanley v. United States*, 321 F. Supp. 2d 805, 807–09 (N.D. W. Va. 2004)).  Consequently, "there is no possibility of recovery" by Plaintiffs against the Medical Defendants, and "[t]he fraudulent joinder doctrine applies." McDowell County Order at 8 (holding in opioid litigation that physician defendant could not be held liable, and was thus fraudulently joined, because he was not served prior to suit with screening certificate of merit conforming to MPLA).

33.     ***Fourth***, the Medical Defendants are fraudulently misjoined in this action because the claims against them do not arise out of the same act, transaction, or occurrence as the claims against the Distributor Defendants, and the respective claims against the Medical Defendants and the Distributor Defendants do not involve common questions of law or fact.   Plaintiffs' allegations against the Distributor Defendants relate to their alleged noncompliance with statutory requirements to report suspicious orders.   *See, e.g.*, Complaint ¶¶ 764–66.   The allegations against the Medical Defendants, by contrast, focus on the allegedly improper prescriptions they wrote for individual patients.  *See id.* ¶¶ 799–804.

34.     Plaintiffs do not plausibly allege any connection between the alleged wrongful conduct of the Medical Defendants and that of the Distributor Defendants, and do not plausibly allege contact, communication, assistance, cooperation, or connection of any kind whatsoever between any of the Medical Defendants and any Distributor Defendant.  The claims against the Medical Defendants — based on writing prescriptions that were allegedly not for a legitimate purpose — arise out of a different set of legal duties owed by differently-situated persons without sufficient connection to the alleged wrongful acts of the Distributor Defendants.

35.     Moreover, the allegations contained in the Complaint are inadequate to connect the Medical Defendants to any shared transaction or occurrence with any of the Distributor Defendants.  The claims against the Distributor Defendants — based on their alleged unlawful distribution of controlled substances to pharmacies within the geographical confines served by Plaintiffs — have no necessary connection to the Medical Defendants' allegedly wrongful conduct.

36.     While this lack of a shared transaction or occurrence alone defeats joinder of Plaintiffs' claims against the Medical Defendants with those against the Distributor Defendants, the two sets of claims also lack any common questions of law or fact.

37.     The claims against these two defendant groups involve fundamentally different questions of law.  Plaintiffs' allegations against the Distributor Defendants depend upon, *inter alia*, the premise that distributors of controlled substances have a legal duty to Plaintiffs not to ship "excessive" amounts of prescription drugs to duly licensed pharmacies in West Virginia counties.  Plaintiffs purport to state a claim exclusively against the Distributor Defendants only in the Ninth Cause of Action.  In contrast, Plaintiffs' claims against the Medical Defendants in the Eleventh Cause of Action are based on a medical provider's legal duty under West Virginia law not to write prescriptions without a legitimate medical purpose or whose purpose was

obviously fraudulent.  That legal duty of a medical provider rests on provisions of West Virginia law that have no application to distributors.[3]

38.     As established above, the Complaint also fails plausibly to assert any factual connection between the Medical Defendants and the Distributor Defendants, and therefore there are no common questions of fact.  The claims therefore do not meet the standard for joinder imposed by Federal Rule of Civil Procedure 20.  For the same reasons, the Medical Defendants are not indispensable parties under Rule 19.  *See Ashworth, supra*, at 411 & n.12.

39.     Even assuming that Plaintiffs have viable claims against the Medical Defendants, the allegations supporting those claims "are legally and factually distinct from the allegations against" the Distributor Defendants, such that any connection between the two sets of claims is too remote to sustain joinder.  *Hughes*, 2009 WL 2877424, at *6.  Hence, "the defendant's right of removal should prevail over that of permitting a plaintiff's choice of forum."  *Id.* at *5 (citation omitted).  The Court should therefore sever the claims against the Medical Defendants "so as to preserve [the Removing Defendants'] right to removal in the remaining action and to preserve the interests of judicial expediency and justice."  *Id.* at *7; *accord* McDowell County Order at 10 (holding in similar litigation that physician defendant was fraudulently misjoined because "the claims against Dr. Cofer arise out of different transactions, involve different evidence, and rest on different legal theories than the claims against the diverse defendants").

40.     ***Fifth***, the Purdue Sales Representatives are fraudulently joined because the claims against them allege that they acted within the scope of their agency to the benefit of Purdue.  *See* syl. pt. 2, *Lowance v. Johnson*, 84 S.E. 937 (W. Va. 1915) ("If a person, assuming to be agent of

---

[3]     While the first three claims are stated against "All Defendants," those claims are derivative of the distinct wrongs separately alleged against the Distributor Defendants and other defendants, respectively.  Like the rest of the Complaint, those claims fail to allege any connection whatsoever between the Medical Defendants and the Distributor Defendants.

another, performs for him an act, which he afterwards ratifies by receiving the benefits derived from it, the principal thereby becomes liable for the torts committed by the agent, within the scope of his assumed authority, in performing the act.  The principal cannot accept the benefits, without also bearing the burdens, of the agent's acts.").  Purdue is therefore the real party in interest, rendering its sales representatives merely nominal parties, whose residence can be ignored for purposes of determining the existence of federal subject matter jurisdiction.  *See Hartford Fire Ins. Co. v. Harleysville Mut. Ins. Co.*, 736 F.3d 255, 259–60 (4th Cir. 2013) (adopting "nominal party exception to the rule of unanimity necessary for removal" where "fundamental inquiry" is whether the party has "no immediately apparent stake in the litigation").  The Purdue corporate defendants themselves are diverse from Plaintiffs because they are not citizens of West Virginia.[4]

41.    ***Sixth***, the Manufacturing Defendants are fraudulently misjoined because the claims against them do not arise out of the same act, transaction, or occurrence as the claims against the Distributor Defendants, and the respective claims against the Manufacturing Defendants and the Distributor Defendants do not involve common questions of law or fact.  Whereas Plaintiffs' allegations against the Distributor Defendants relate to their alleged noncompliance with statutory requirements to report suspicious orders, *see, e.g.*, Complaint ¶¶ 764–66, the allegations against the Manufacturing Defendants focus on their efforts to

---

[4]    Indeed, all of the Manufacturing Defendants are diverse from Plaintiffs.  Thus, the Manufacturing Defendants' presence in this lawsuit does not defeat diversity jurisdiction, and the Court need not address the Manufacturing Defendants' presence to determine whether removal is proper here.  Nevertheless, the factual basis for the claims against the Manufacturing Defendants, on the one hand, and the claims against the Distributor Defendants, on the other, is separate and distinct, and nothing in this Notice of Removal should be construed to mean that the claims against the Manufacturing Defendants and Distributor Defendants are properly joined in the same action.  The Manufacturing Defendants and Distributor Defendants thus reserve their separate and independent rights to sever the claims against each other at an appropriate time.

illegitimately expand the market for the opioids they produce to encourage the sale of those products in a manner inconsistent with their reasonably safe and effective use. *See, e.g.*, Complaint ¶¶ 707, 712, 716, 730–33, 737, 741, 747–48.

42.     Plaintiffs do not plausibly allege any connection between the alleged wrongful conduct of the Manufacturing Defendants and that of the Distributor Defendants, and do not plausibly allege relevant contact, communication, assistance, cooperation, or connection of any kind whatsoever between any of the Manufacturing Defendants and any Distributor Defendant. The claims against the Manufacturing Defendants — based on deceptive marketing to physicians to encourage prescribing opioids that were allegedly not for a legitimate purpose — arise out of a different set of legal duties owed by differently situated persons without sufficient connection to the alleged wrongful acts of the Distributor Defendants.

43.     Moreover, the allegations contained in the Complaint are inadequate to factually connect the Manufacturing Defendants to any shared transaction or occurrence with any of the Distributor Defendants.  The claims against the Distributor Defendants — based on their alleged unlawful distribution of controlled substances to pharmacies within the geographical confines served by Plaintiffs — have no necessary connection to the Manufacturing Defendants' allegedly wrongful conduct.

44.     While this lack of a shared transaction or occurrence alone defeats joinder of Plaintiffs' claims against the Manufacturing Defendants with those against the Distributor Defendants, the two sets of claims also lack any common question of law or fact.

45.     The claims against these two defendant groups involve fundamentally different questions of law.  Plaintiffs' allegations against the Distributor Defendants depend upon, *inter alia*, the premise that distributors of controlled substances have a legal duty to Plaintiffs not to ship "excessive" amounts of prescription drugs to duly licensed pharmacies in West Virginia

counties.  Plaintiffs purport to state a claim exclusively against the Distributor Defendants only in the Ninth Cause of Action.  In contrast, Plaintiffs' claims against the Manufacturing Defendants in the Fourth through Eighth Causes of Action are based on a manufacturer's duty under West Virginia law not to misrepresent the benefits and dangers of a product, and to design and sell inherently dangerous products in a manner consistent with their intended use.  These duties of the manufacturers are distinct from the alleged duties of distributors and rest on distinct provisions of West Virginia law.[5]

46.    As established above, the Complaint also fails to plausibly assert any factual connection between the Manufacturing Defendants and the Distributor Defendants, and therefore there are no common questions of fact.  The two sets of claims therefore do not meet the standard for joinder imposed by Rule 20 of the Federal Rules of Civil Procedure.  For the same reasons, the Manufacturing Defendants are not indispensable parties under Rule 19.  *See Ashworth, supra*, at 411 & n.12.

47.    The allegations supporting Plaintiffs' claims against the Manufacturing Defendants "are legally and factually distinct from the allegations against" the Distributor Defendants, such that they are too remote to sustain joinder.  *Hughes*, 2009 WL 2877424, at *6. Hence, "the defendant's right of removal should prevail over that of permitting a plaintiff's choice of forum."  *Id.* at *5 (citation omitted).  The Court should therefore sever the claims against the Manufacturing Defendants "so as to preserve [the Removing Defendants'] right to

---

[5]    While the first three claims are stated against "All Defendants," those claims are derivative of the distinct wrongs separately alleged against the Distributor Defendants and other defendants, respectively.  Like the rest of the Complaint, those claims fail to allege any connection whatsoever between the Manufacturing Defendants and the Distributor Defendants.

removal in the remaining action and to preserve the interests of judicial expediency and justice." *Id.* at *7.

48.     **Seventh**, Goodwin is fraudulently joined because "there is no possibility of recovery" by Plaintiffs against it, as their claims are barred by the applicable statute(s) of limitations and laches. *Johnson*, 781 F.3d at 704. Upon information and belief, Goodwin voluntarily surrendered its DEA registration to distribute controlled substances in April of 2015. Because Goodwin has not engaged in the distribution of controlled substances since at least April 2015, the claims asserted by Plaintiffs in their December 2017 Complaint are time-barred.

49.     Moreover, Goodwin has no evident stake in this litigation. There are *no* individualized allegations in the Complaint against Goodwin, and, on information and belief, Goodwin is no longer a going concern. It appears likely that Goodwin is judgment-proof, strongly indicating that it was joined solely to defeat diversity jurisdiction. *C.f. Hartford Fire Ins. Co. v. Harleysville Mut. Ins. Co.*, 736 F.3d 255, 259–60 (4th Cir. 2013) (adopting "nominal party exception to the rule of unanimity necessary for removal" where "fundamental inquiry" is whether the party has "no immediately apparent stake in the litigation").

50.     **Eighth and last**, even if this Court determines that one or more of the non-diverse defendants satisfy the conditions for permissive joinder in accordance with Rule 20, it should nonetheless exercise its discretion pursuant to Federal Rule of Civil Procedure 21 to sever Plaintiffs' claims against that defendant or defendants and preserve federal jurisdiction with respect to Plaintiffs' claims against the diverse defendants, thereby permitting those claims to be transferred to the Northern District of Ohio, subject to the approval of the United States Judicial Panel on Multidistrict Litigation. Severance under Rule 21 would promote efficiency and preserve scarce judicial resources.

51.     This Court has diversity jurisdiction under 28 U.S.C. § 1332 because, once the presumed West Virginia citizenships of the fraudulently joined or misjoined defendants are disregarded, this civil action is between citizens of different States, and the matter in controversy exceeds the sum of $75,000.

52.     With respect to the matter in controversy, Plaintiffs seek damages for, *inter alia*, "incurring excessive costs related to diagnosis, treatment, and cure of abuse and/or addiction or risk of addiction to opioids," together with "bearing the *massive* costs of these illnesses and conditions by having to provide necessary resources for care, treatment facilities, and law enforcement associated with opioid addiction, abuse and diversion; and property damage." Complaint ¶ 819 (emphasis added).   Plaintiffs also seek other economic and noneconomic damages, *see id.* ¶ 820, and they pursue an award of punitive damages, *see id.* ¶¶ 815–18.   These allegations demonstrate why the "amount in controversy [plausibly] exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 554 (2014); *see St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938) ("It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal.").

53.     Because Plaintiffs' claims are within this Court's original jurisdiction under 28 U.S.C. § 1332 and because the Distributor Defendants are not citizens of West Virginia, this case is removable to this Court under 28 U.S.C. § 1441(b).

54.     The Removing Defendants file this Notice without waiving any defenses to the claims asserted by Plaintiffs.

**WHEREFORE**, the Removing Defendants remove this action, now pending in the Circuit Court of Marshall County, West Virginia as Civil Action Nos. 17-C-248 through 17-C-255, to the Northern District of West Virginia.

Dated this the 18th day of January, 2018.


Respectfully submitted,

**CARDINAL HEALTH, INC.**

**By Counsel,**

/s/ Steven R. Ruby
_____
Brian A. Glasser (WVSB #6597)
bglasser@baileyglasser.com
Steven R. Ruby (WVSB #10752)
sruby@baileyglasser.com
BAILEY & GLASSER, LLP
209 Capitol Street
Charleston, WV 25301
Telephone:  (304) 345-6555
Facsimile:  (304) 342-1110


Enu Mainigi (*pro hac vice* application to
be filed)
emainigi@wc.com
F. Lane Heard (*pro hac vice* application to
be filed)
lheard@wc.com
Steven M. Pyser (*pro hac vice* application
to be filed)
spyser@wc.com
Ashley W. Hardin (*pro hac vice*
application to be filed)
ahardin@wc.com
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, DC  20005
Telephone: (202) 434-5000
Facsimile: (202) 434-5029


*Counsel for Cardinal Health, Inc.*

**McKESSON CORPORATION**

**By Counsel,**

/s/Russell D. Jessee

Russell D. Jessee (WVSB #10020)
russell.jessee@steptoe-johnson.com
STEPTOE & JOHNSON PLLC
Chase Tower, 17th Floor
P.O. Box 1588
Charleston, WV 25326
Telephone: (304) 353-8000
Facsimile:  (304) 353-8180

*Counsel to McKesson in actions by Brooke,*
*Hancock, Ohio, Tyler, and Wetzel Counties*

/s/ Jeffrey M. Wakefield

Jeffrey M. Wakefield (WVSB #3894)
JWakefield@flahertylegal.com
FLAHERTY SENSABAUGH BONASSO
PLLC
P. O. Box 3843
Charleston, WV 25338-3843
Telephone: (304) 345-0200

*Counsel to McKesson in actions by Lewis*
*and Marshall Counties*

/s/Daniel C. Cooper

Daniel C. Cooper (WVSB# 5476)
dan.cooper@cooperlawwv.com
Jamison H. Cooper (WVSB# 8043)
jami.cooper@cooperlawwv.com
COOPER LAW OFFICES, PLLC
240 Main Street
Bridgeport, WV 26330
Telephone: (304) 842-0505
Facsimile:  (304) 842-0544

*Counsel to McKesson in action by Harrison*
*County*

And

Geoffrey Hobart (visiting attorney notice to
be filed)
ghobart@cov.com
Matthew Benov (visiting attorney notice to
be filed)
mbenov@cov.com
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, NW
Washington, DC 20001
Telephone: (202) 662-6000

*Counsel to McKesson Corporation*

22

**AMERISOURCEBERGEN DRUG CORPORATION**

**By Counsel,**

/s/ A. L. Emch
A. L. Emch (WVSB #1125)
aemch@jacksonkelly.com
Adam J. Schwendeman (WVSB #11989)
aschwendeman@jacksonkelly.com
JACKSON KELLY PLLC
500 Lee Street East, Suite 1600
P.O Box 553
Charleston, West Virginia 25322
Telephone: (304) 340-1000
Facsimile: (304) 340-1130

Robert A. Nicholas (*pro hac vice* application to be filed)
Shannon E. McClure (*pro hac vice* application to be filed)
REED SMITH LLP
1717 Arch Street, Suite 3100
Philadelphia, PA 19103
(215) 851-8100
rnicholas@reedsmith.com
smcclure@reedsmith.com

*Counsel for AmerisourceBergen Drug Corporation*

And

/s/ Todd A. Mount
Harry G. Shaffer III, Esquire (WVSB# 3344)
Todd A. Mount, Esquire (WVSB# 6939)
Shaffer & Shaffer
P.O. Box 38
Madison, WV  25130
office:  304-369-0511
fax:  304-369-5431
hshaffer@shafferlaw.net
tmount@shafferlaw.net

*Counsel for AmerisourceBergen Drug Corporation in Ohio County Commission*

**WRITTEN CONSENT OF OTHER DEFENDANTS**

Consent to removal on behalf of Defendant
RITE AID OF MARYLAND, INC.:

 /s/ Webster J. Arceneaux, III
Webster J. Arceneaux, III
LEWIS, GLASSER, CASEY & ROLLINS,
PLLC,
Post Office Box 1746
Charleston, WV 25326
304-345-2000
wjarceneaux@lgcr.com

Consent to removal on behalf of Defendant
KROGER LIMITED PARTNERSHIP II:

 /s/ Ronda L. Harvey
Ronda L. Harvey (WVSB #6326)
Gerard R. Stowers (WVSB #3633)
BOWLES RICE LLP
600 Quarrier Street;
Charleston, WV 25301
(304) 347-1100
rharvey@bowlesrice.com
gstowers@bowlesrice.com

Consent to removal on behalf of Defendant CVS
INDIANA, LLC:

 /s/ Carte P. Goodwin
Carte P. Goodwin (WVSB #8039)
Joseph M. Ward (WVSB #9733)
FROST BROWN TODD LLC
500 Virginia Street, East
Suite 1100
Charleston, WV 25301-3207
304-345-0111
cgoodwin@fbtlaw.com
jward@fbtlaw.com

Eric Delinsky*
ZUCKERMAN SPAEDER LLP
1800 M Street, NW
Suite 1000
Washington, DC 20036
(202) 778-1831
edelinsky@zuckerman.com

*denotes national counsel who will seek pro hac vice admission*


Consent to removal on behalf of Defendant
WAL-MART STORES EAST, LP:

 /s/ Neva G. Lusk
Neva G. Lusk (WV Bar No. 2274)
James S. Crockett, Jr. (WV Bar No. 9229)
SPILMAN THOMAS & BATTLE, PLLC
300 Kanawha Boulevard, East (25301)
Post Office Box 273
Charleston, WV 25321-0273
(304) 340-3866
(304) 340-3801
nlusk@spilmanlaw.com
jcrockett@spilmanlaw.com

James R. Wooley*
Christopher S. Dodrill (WV Bar No. 11040)
JONES DAY
901 Lakeside A venue
Cleveland, OH 44114-1190
jrwooley@jonesday.com
cdodrill@jonesday.com

*denotes national counsel who will seek pro hac vice admission*

Consent to removal on behalf of Defendants
PURDUE PHARMA L.P., PURDUE PHARMA
INC., and THE PURDUE FREDERICK
COMPANY INC.:

 /s/ Sheila L. Birnbaum *
Sheila L. Birnbaum*
Mark S. Cheffo*
Hayden A. Coleman*
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, New York 10010
(212) 849-7000
markcheffo@quinnemanuel.com
haydencoleman@quinnemanuel.com

Patrick J. Fitzgerald*
R. Ryan Stoll*
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM LLP
4 Times Square
New York, NY 10036
(212) 735-3000
patrick.fitzgerald@skadden.com
ryan.stoll@skadden.com

-and-

155 North Wacker Drive
Chicago, IL 60606
(312) 407-0700
*denotes national counsel who will seek pro hac
vice admission*

Consent to removal on behalf of Defendants
TEVA PHARMACEUTICALS USA, INC.,
CEPHALON, INC., WATSON
LABORATORIES, INC., ACTAVIS LLC, and
ACTAVIS PHARMA, INC. F/K/A WATSON
PHARMA, INC.:

/s/ Steven A. Reed*
Steven A. Reed*
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103
(215) 963-5000
steven.reed@morganlewis.com

Brian M. Ercole*
MORGAN, LEWIS & BOCKIUS LLP
5300 Southeast Financial Center
200 South Biscayne Blvd.
Miami, FL 33131
(305) 415-3416
brian.ercole@morganlewis.com
*denotes national counsel who will seek pro hac
vice admission*

Consent to removal on behalf of Defendants
JOHNSON & JOHNSON, JANSSEN
PHARMACEUTICALS, INC., ORTHO-
MCNEIL-JANSSEN PHARMACEUTICALS,
INC. N/K/A JANSSEN
PHARMACEUTICALS, INC., and JANSSEN
PHARMACEUTICA, INC. N/K/A JANSSEN
PHARMACEUTICALS, INC.
(Appearance by local counsel pending):

/s/ Charles C. Lifland*
Charles C. Lifland*
O'MELVENY & MYERS LLP
400 S. Hope Street
Los Angeles, CA 90071
(213) 430-6000
clifland@omm.com
*denotes national counsel who will seek pro hac
vice admission*

27

Consent to removal on behalf of Defendants
ALLERGAN PLC (F/K/A ACTAVIS PLC)[6]
AND ACTAVIS, INC. (N/K/A ALLERGAN
FINANCE, LLC F/K/A WATSON
PHARMACEUTICALS, INC.):

/s/ Donna Welch*
Donna Welch, P.C.*
Martin L. Roth*
Timothy Knapp*
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, Illinois 60654
(312) 862-2000
donna.welch@kirkland.com
martin.roth@kirkland.com
timothy.knapp@kirkland.com

Jennifer G. Levy, P.C.*
KIRKLAND & ELLIS LLP
655 Fifteenth Street, NW
Washington, DC 20005
(202) 879-5000
jennifer.levy@kirkland.com
*denotes national counsel who will seek pro hac
vice admission*

---

[6]   Allergan plc, an Irish Company, has not been properly served and expressly reserves all
defenses related to personal jurisdiction and service of process.

Consent to removal on behalf of Defendants
ENDO HEALTH SOLUTIONS INC. and
ENDO PHARMACEUTICALS INC.:

/s/ Michael J. Farrell
Michael J. Farrell, Esq. (WVSB #1168)
Tamela J. White, Esq. (WVSB #6392)
Erik W. Legg, Esq. (WVSB #7738)
FARRELL, WHITE & LEGG PLLC
The Farrell Building
914 5th Avenue
P.O. Box 6457
Huntington, WV 25772
Telephone: 304-522-9100
Facsimile 304-522-9162
mjf@farrell3.com
tjw@farrell3.com
ewl@farrell3.com

Sean Morris*
John D. Lombardo*
ARNOLD & PORTER KAYE SCHOLER LLP
777 S. Figueroa Street
44th Floor
Los Angeles, CA 90017
(213) 243-4000
Sean.Morris@apks.com
John.Lombardo@apks.com
*denotes national counsel who will seek pro hac vice admission

## <u>CERTIFICATE OF SERVICE</u>

The undersigned counsel for Defendant Cardinal Health, Inc., hereby certifies that on January 18, 2017, he caused the foregoing document to be served on the following counsel and parties via First Class U.S. Mail, postage prepaid, and/or the CM/ECF system for the Northern District of West Virginia.

Robert P. Fitzsimmons
Clayton J. Fitzsimmons
Mark A. Colantonio
FITZSIMMONS LAW FIRM PLLC
1609 Warwood Avenue
Wheeling, West Virginia 26003

Paul J. Napoli
Hunter J. Shkolnik
Joseph L. Ciaccio
Shayna E. Sacks
Salvatore C. Badala
NAPOLI SHKOLNIK PLLC
400 Broadhollow Road, Suite 350
Melville, New York 11747

Jonathan E. Turak
GOLD, KHOUREY & TURAK
510 Tomlinson Avenue
Moundsville, West Virginia 26041

Joseph F. Shaffer
Samuel D. Madia
SHAFFER MADIA LAW PLLC
343 West Main Street
Clarksburg, West Virginia 26301

Webster J. Arceneaux, III
LEWIS, GLASSER, CASEY & ROLLINS, PLLC,
Post Office Box 1746
Charleston, WV 25326

Rhonda L. Harvey
Gerard R. Stowers
BOWLES RICE LLP
600 Quarrier Street;
Charleston, WV 25301

Carte P. Goodwin
Joseph M. Ward
FROST BROWN TODD LLC
500 Virginia Street, East, Suite 1100
Charleston, WV 25301-3207

Eric Delinsky
ZUCKERMAN SPAEDER LLP
1800 M Street, NW, Suite 1000
Washington, DC 20036

Neva G. Lusk
James S. Crockett, Jr.
SPILMAN THOMAS & BATTLE, PLLC
Post Office Box 273
Charleston, WV 25321-0273

James R. Wooley
Christopher S. Dodrill
JONES DAY
901 Lakeside Avenue
Cleveland,  OH 44114-1190

Sheila L. Birnbaum
Mark S. Cheffo
Hayden A. Coleman
QUINN EMANUEL URQUHART & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, New York 10010

Patrick J. Fitzgerald
R. Ryan Stoll
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM LLP
4 Times Square
New York, NY 10036

-and-

155 North Wacker Drive
Chicago, IL 60606

Steven A. Reed
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103

Brian M. Ercole
MORGAN, LEWIS & BOCKIUS LLP
5300 Southeast Financial Center
200 South Biscayne Blvd.
Miami, FL 33131

Charles C. Lifland
O'MELVENY & MYERS LLP
400 S. Hope Street
Los Angeles, CA 90071

Donna Welch, P.C.
Martin L. Roth
Timothy Knapp
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, Illinois 60654

Jennifer G. Levy, P.C.
KIRKLAND & ELLIS LLP
655 Fifteenth Street, NW
Washington, DC 20005

Michael J. Farrell
Tamela J. White
Erik W. Legg
FARRELL, WHITE & LEGG PLLC
The Farrell Building
P.O. Box 6457
Huntington, WV 25772

Sean Morris
John D. Lombardo
ARNOLD & PORTER KAYE SCHOLER LLP
777 S. Figueroa Street, 44th Floor
Los Angeles, CA 90017

*/s/ Steven R. Ruby*
Steven R. Ruby