CJF/klc: 01/24/18

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
## (WHEELING DIVISION)

| | |
|---|---|
| BROOKE COUNTY COMMISSION,<br>HANCOCK COUNTY COMMISSION,<br>HARRISON COUNTY COMMISSION,<br>LEWIS COUNTY COMMISSION,<br>MARSHALL COUNTY COMMISSION,<br>OHIO COUNTY COMMISSION,<br>TYLER COUNTY COMMISSION, and<br>WETZEL COUNTY COMMISSION, | Civil Action No. 5:18-cv-9<br>Civil Action No. 5:18-cv-10<br>Civil Action No. 5:18-cv-11<br>Civil Action No. 5:18-cv-12<br>Civil Action No. 5:18-cv-13<br>Civil Action No. 5:18-cv-14<br>Civil Action No. 5:18-cv-15<br>Civil Action No. 5:18-cv-16 |
|           Plaintiffs, | |
| vs. | |
| PURDUE PHARMA L.P.; PURDUE PHARMA<br>INC.; THE PURDUE FREDERICK<br>COMPANY, INC.; MARK RADCLIFFE;<br>MARK ROSS; PATTY CARNES; TEVA<br>PHARMACEUTICALS USA, INC.;<br>CEPHALON, INC.; JANSSEN<br>PHARMACEUTICALS, INC.; ORTHO-<br>MCNEIL-JANSSEN PHARMACEUTICALS,<br>INC. n/k/a Janssen Pharmaceuticals, Inc.;<br>JANSSEN PHARMACEUTICA, INC. n/k/a<br>Janssen Pharmaceuticals, Inc.; JOHNSON &<br>JOHNSON; ENDO HEALTH SOLUTIONS<br>INC.; ENDO PHARMACEUTICALS, INC.;<br>ALLERGAN plc; ACTAVIS plc;  ACTAVIS,<br>INC.; ACTAVIS LLC; ACTAVIS PHARMA,<br>INC.; WATSON PHARMACEUTICALS, INC.;<br>WATSON PHARMA, INC.; WATSON<br>LABORATORIES, INC.; MCKESSON<br>CORPORATION; CARDINAL HEALTH,<br>INC.; AMERISOURCEBERGEN DRUG<br>CORPORATION; RITE AID OF<br>MARYLAND, INC.; KROGER LIMITED<br>PARTNERSHIP II; CVS INDIANA, L.L.C.;<br>WAL-MART STORES EAST, LP; GOODWIN<br>DRUG COMPANY; WEST VIRGINIA<br>BOARD OF PHARMACY; DAVID<br>POTTERS; EDITA P. MILAN, M.D.;<br>TRESSIE MONTENE DUFFY, M.D.;<br>EUGENIO ALDEA MENEZ, M.D.;<br>SCOTT JAMES FEATHERS, D.P.M.; and<br>AMY LYNN BEAVER, P.A.-C, | Judge John Preston Bailey |
|           Defendants. | |

## <u>PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR<br>EMERGENCY MOTION TO REMAND</u>

COMES NOW, the Plaintiffs, by and through their undersigned counsel, and submit *Plaintiffs' Memorandum of Law in Support of Their Emergency Motion to Remand*. For the reasons set forth herein, Plaintiffs respectfully request this Court to remand this action to the Circuit Court of Marshall County, West Virginia because this Court lacks subject matter jurisdiction.

### <u>FACTS AND PROCEDURAL HISTORY</u>

Plaintiffs filed the instant action in the Circuit Court of Marshall County, West Virginia on December 13, 2017. In their Complaint, Plaintiffs seek to abate the public nuisance caused by the opioid epidemic in their respective counties, and to recoup monies and costs they have spent because of Defendants' false, deceptive and unlawful marketing, unlawful distribution, and/or unlawful diversion of prescription opioids. Plaintiffs bring this action against five classes of Defendants - all of whom have caused and/or contributed to the occurrence of the opioid epidemic in their counties: (1) the Manufacturer Defendants, (2) the Purdue Sales Representative Defendants, (3) the Distributor Defendants, (4) the West Virginia Board of Pharmacy (hereinafter "BOP") and its former Executive Director, David Potters, and (5) the Doctor Defendants. (Compl., ¶ 46.) Plaintiffs' Complaint seeks compensatory and punitive damages and alleges causes of action for: (1) public nuisance, (2) unjust enrichment, (3) fraud by concealment, (4) negligent marketing, (5) fraud and intentional misrepresentation, (6) negligent misrepresentation, (7) negligence, (8) product liability – defective design, (9) product liability – failure to warn, (10) malicious and intentional conduct, and (11) medical malpractice – pled in the alternative. On January 19, 2018, Defendants removed this case pursuant to 28 U.S.C. § 1332

1

alleging in shotgun fashion numerous bases for federal jurisdiction – all of which lack merit. Three days later, on January 22, 2018, Defendants designated this action as a tag-along action to the recently formed Opioid MDL pending in Cleveland, Ohio and the JPML subsequently issued a Conditional Transfer Order on January 24, 2018.

## STANDARD OF REVIEW

"[Federal courts] are obliged to construe removal jurisdiction strictly because of the significant federalism concerns implicated and that if federal jurisdiction is doubtful, a remand to state court is necessary." *Palisades Collections LLC v. Shorts*, 552 F.3d 327, 333-334 (4th Cir. 2008). "The burden of establishing federal jurisdiction is placed upon the party seeking removal." *Mulcahey v. Columbia Organic Chemicals Co., Inc.*, 29 F.3d 148, 151 (4th Cir. 1994). Accordingly, the Removing Defendants have the burden to show the existence of federal jurisdiction by a preponderance of the evidence. *See, Virden v. Altria Group, Inc.*, 304 F.Supp.2d 832, 847 (N.D.W.Va. 2004). In deciding whether to remand, this Court must "resolve all doubts about the propriety of removal in favor of retained state jurisdiction." *Hartley v. CSX Transp., Inc.*, 187 F.3d 422, 425 (4th Cir.1999).

When a defendant seeks removal alleging fraudulent joinder, the "party alleging fraudulent joinder bears a *heavy burden*." *Hartley*, 187 F.3d at 424 (emphasis added). In fact, the fraudulent joinder standard "is even more favorable to the plaintiff than the standard for ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6)." *Mayes v. Rapoport, 1*98 F.3d 457, 464 (4th Cir.1999). Fraudulent joinder "must be proved by *clear and convincing evidence* consisting of facts rightly leading to that conclusion, apart from the deductions of the pleader." *Rinehart v. Consolidation Coal Co.*, 660 F. Supp. 1140, 1141 (N.D. W. Va. 1987).

2

In determining whether a party has been fraudulently joined, "[a]ll factual allegations must be evaluated in the light most favorable to the [non-removing party], resolving all contested issues of substantive fact in favor of the [non-removing party]." *Rinehart*, 660 F.Supp. at 1141. Further, the district court "must resolve any uncertainties as to current state of controlling law in favor of plaintiffs." *Id.* "A claim need not ultimately succeed to defeat removal; only a possibility of a right to relief need be asserted." *Marshall*, 6 F.3d at 233. The removing defendant must prove "there is ***no possibility*** the plaintiff would be able to establish a cause of action." *Mayes*, 198 F.3d at 464. Stated alternatively, the plaintiff need only demonstrate a "glimmer of hope" to relief in order to have the case remanded. *Hartley*, 187 F.3d at 426.

## ARGUMENT

I.   **CONSTRUING ALL FACTUAL ALLEGATIONS IN THE LIGHT MOST FAVORABLE TO PLAINTIFFS, AND RESOLVING ALL CONTESTED ISSUES OF FACT AND LAW IN FAVOR OF PLAINTIFFS, THE REMOVING DEFENDANTS HAVE FAILED TO PROVE BY CLEAR AND CONVINCING EVIDENCE THAT DEFENDANT GOODWIN WAS FRAUDULENTLY JOINED.**

The Removing Defendants Plaintiffs contend that Plaintiffs' claims against Defendant Goodwin are barred by the applicable statute of limitations because Goodwin "voluntarily surrendered its DEA registration to distribute controlled substances in April of 2015." (Notice, ¶ 48.) But the Removing Defendants have offered no competent proof or evidence to support their contention, and instead have presented only speculative statements. This is insufficient for Defendants to sustain their heavy burden.

But even assuming Defendants' bald assertions are correct, the statute of limitations does not preclude Plaintiffs' claims here. Plaintiffs have asserted a claim against Goodwin for public nuisance. (*See* Compl., First Cause of Action.) In West Virginia, the statute of limitations for

3

public nuisance claim does not begin to run until the "harm or endangerment to the public health, safety, and the environment is abated." Syl. Pt. 11, *State ex rel. Smith v. Kermit Lumber & Pressure Treating, Co.*, 200 W.Va. 221, 225, 488 S.E.2d 901, 905 (1997) (finding lawsuit filed by the plaintiff in 1995 alleging public nuisance was not time barred despite the defendant's business terminating in 1988). The public nuisance created in part by Defendant Goodwin remains unabated and, thus, the statute of limitations on Plaintiffs' claim for public nuisance has not yet begun to run. (*See* Compl., ¶¶ 2, 680 and 690).

In addition, Plaintiffs' claims against Defendant Goodwin have not run because Goodwin's actions constitute a continuing tort. The continuing-tort doctrine applies "[w]here there is a repeated or continuous injury and where the damages do not occur all at once but increase as time progresses"; in such instances, "the tort is not completed, nor have all the damages been incurred, until the last injury is inflicted or the wrongdoing ceases." *Patrick v. Sharon Steel Corp.*, 549 F.Supp. 1259, 1264 (N.D.W.Va.1982). Accordingly, "where a tort involves a continuing or repeated injury, the cause of action accrues at and the statute of limitations begins to run from the date of the last injury or when the tortious overt acts or omissions cease." *Graham v. Beverage*, 211 W.Va. 466, 566 S.E.2d 603, 614 (2002). Plaintiffs have made a sufficient showing that the continuing-tort doctrine applies here because Plaintiffs allege a continuing injury that has increased as time progresses and further that Goodwin has failed to remediate the effects of its tortious conduct. *See, Rhodes v. E.I. du Pont de Nemours & Co.*, 657 F. Supp. 2d 751, 760 (S.D.W. Va. 2009), *aff'd in part, appeal dismissed in part,* 636 F.3d 88 (4th Cir. 2011).

Moreover, the statute of limitations on Plaintiffs' claims against Defendant Goodwin is tolled pursuant to West Virginia's discovery rule. Under the discovery rule, the statute of

4

limitations begins to run when the plaintiff knows, or by the exercise of reasonable diligence, should know: (1) that the plaintiff has been injured, (2) the identity of the entity who owed the plaintiff a duty to act with due care, and who may have engaged in conduct that breached that duty, and (3) that the conduct of that entity has a causal relation to the injury." Syl. Pt. 4, *Gaither v. City Hosp., Inc.*, 199 W.Va. 706, 487 S.E.2d 901 (1997). Here, Plaintiffs allege that Defendant Goodwin took steps to avoid detection of, and fraudulently concealed its conspiratorial behavior and its negligent and reckless conduct relating to its distribution of opioid drugs. (Compl., ¶ 43.) Plaintiffs further allege that Plaintiffs did not know or could not have known through the exercise of reasonable diligence of Defendants' tortious and improper conduct and/or the identity of the alleged tortfeasors. (Compl. ¶¶ 701-702.) As such, any statute of limitations for Plaintiffs' claim was tolled pursuant to the discovery rule until that time Plaintiffs knew, or by the exercise of reasonable diligence, should have known of the existence of their cause of action, the identity of the alleged tortfeasors, and the conduct that gave rise to their damages.

At a minimum, the application of the statute of limitations as related to Plaintiffs' claims against Defendant Goodwin presents numerous factual questions which must be resolved and which mandate a remand of this action to state court. As Courts in this District have held, "if [a] statute of limitations issue is difficult to determine, the doctrine of fraudulent joinder is not appropriate, and the case should be remanded to the state court." *Miller v. Huntington Nat. Bank, N.A.*, No. 3:12-CV-114, 2013 WL 3878742, at *5 (N.D.W. Va. July 26, 2013).

To the extent the Removing Defendants contend that Defendant Goodwin's citizenship should be ignored because it is a "nominal" party, this argument must also fail. (Notice, ¶ 49.) To establish that a defendant is a "nominal party," this Court has held that the removing party must prove: (1) that the alleged nominal party does not have a real interest in this litigation; (2) the

plaintiff does not have a possible claim against the alleged nominal party; and (3) entry of a final judgment in the absence of the alleged nominal party would be equitable. *Heller v. TriEnergy, Inc.*, 877 F. Supp. 2d 414, 424 (N.D.W. Va. 2012). Applying this test to the facts of the present case, the Removing Defendants have not – and cannot – prove that Defendant Goodwin is a nominal party.

*First*, Defendant Goodwin has a real interest in this litigation. According to the West Virginia Secretary of State, Defendant Goodwin is an active for profit corporation. (*See* Goodwin Drug Company's W.Va. Secretary of State Business Organization Detail, attached hereto as Exhibit 1.) If Plaintiffs prevail on their claims, Defendant Goodwin faces real and significant financial liability.[1] (*See* Compl., ¶¶ 819-820 and Demand for Relief). Additionally, Defendant Goodwin has retained counsel to defend its rights and participate in the defense of this litigation, thus evidencing its active stake in this litigation. (*See* Email from Ted Hess to Mark Colantonio, RE: Opioid litigation (January 9, 2018, 4:11 PM), attached hereto as Exhibit 2.) *Second*, as discussed in greater detail above, Plaintiffs have a legally viable claim against Defendant Goodwin that is not time barred. *Third*, an entry of judgment in the absence of Defendant Goodwin would be unfair and inequitable to Plaintiffs as Plaintiffs would not be able to recover those damages assessed against Defendant Goodwin for its proportionate fault.

Simply stated, Plaintiffs have asserted timely and legally sufficient claims against Defendant Goodwin. Such is especially true in the context of a fraudulent joinder analysis as

---

[1]     As their sole support for this argument, the Removing Defendants claim it "appears likely" that Defendant Goodwin is judgment proof. (Notice, ¶ 49.) This argument is legally and factually flawed. This argument is purely speculative and has no evidentiary support. This argument also ignores the possibility that Defendant Goodwin has insurance policies to cover Plaintiffs' claims. Finally, there is no bright-line rule, and the Removing Defendants have cited no authority holding that an alleged judgment proof defendant is automatically relegated to the status of a "nominal party" for removal purposes.

6

Plaintiffs need only demonstrate a "glimmer of hope" or possibility that their claims are proper. Accordingly, Defendant Goodwin was not fraudulently joined and, therefore, this Court lacks subject matter jurisdiction because diversity jurisdiction is non-existent.

**II.    CONSTRUING ALL FACTUAL ALLEGATIONS IN THE LIGHT MOST FAVORABLE TO PLAINTIFFS, AND RESOLVING ALL CONTESTED ISSUES OF SUBSTANTIVE FACT AND LAW IN FAVOR OF PLAINTIFFS, THE REMOVING DEFENDANTS HAVE FAILED TO PROVE BY CLEAR AND CONVINCING EVIDENCE THAT THE PURDUE SALES REPRESENTATIVE DEFENDANTS WERE FRAUDULENTLY JOINED.**

**A.    The Mere Fact That the Purdue Sales Representative Defendants Were Alleged to Have Acted Within the Scope of Their Agency Does Not Render Them "Nominal Parties" Such That Their Citizenship Should be Ignored for Diversity Purposes.**

The sole basis for Defendants' contention that the Purdue Sales Representative Defendants were fraudulently joined is that these Defendants were acting within the scope of their agency with the Manufacturer Defendants. This argument completely lacks merit. Plaintiffs' Complaint asserts claims against the Purdue Sales Representative Defendants in their individual capacity and, therefore, Plaintiffs can seek to collect any judgment they obtain against them personally. This is true regardless of whether the Purdue Sales Representative Defendants were employees and/or agents of Defendant Purdue and were acting within the scope of their employment/agency. The law in West Virginia is clear: an agent, acting within the course and scope of his employment, not only makes his employer liable, but also establishes liability on behalf of the individual agent. Syl. Pt. 5, *Travis v. Alcon Laboratories, Inc.*, 202 W.Va. 369 (1998) ("An agent or employee *can be held personally liable* for his own torts against third parties and this personal liability is *independent* of his agency or employee relationship. Of course, if he is acting within the scope of his employment then his principal or employer may also be held liable.")

7

Significantly, the same argument that the Removing Defendants advance here has previously been rejected by this Court. *Dent v. Chesapeake Appalachia*, LLC, No. 5:12CV53, 2013 WL 461255, at *6 (N.D.W. Va. Feb. 5, 2013) (holding that individual defendant was not fraudulently joined even though it was alleged he was acting within the course and scope of his employment because the plaintiff asserted a possible claim against him in his individual capacity and that he was not protected from liability *respondeat superior*). And there is no valid reason not to similarly reject Defendants' argument in this case.

### B. Plaintiffs' Claims Against The Purdue Sales Representatives, the Manufacturer Defendants, and the Distributor Defendants are Properly Joined Pursuant to this Court's Liberal Joinder Rules.

The Supreme Court of the United States has said that Rule 20(a) must be interpreted to allow for the "***broadest possible scope of action*** consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged." *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 724 (1966). Therefore, "the rule should be construed in light of its purpose, 'which is to promote trial convenience and expedite the final determination of disputes, thereby preventing multiple lawsuits.'" *Saval v. BL, Ltd.*, 710 F.2d 1027, 1031 (4th Cir.1983). Moreover, the requirements of Rule 20 are to be "***liberally construed***." *Potomac Valley Hospital of W.Va., Inc. v. Streuver Bros.*, Civil Action No. 3:09–CV–72, 2010 WL 11526861 (N.D.W.Va. March 29, 2010)(emphasis added).

In determining whether a right to relief arises from the same transaction or occurrence, the focus is on the relationship between events giving rise to the action. *See Moore v. N.Y. Cotton Exch.*, 270 U.S. 593, 610 (1926) ("Transaction is a word of flexible meaning. It may comprehend many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship.")."Accordingly, all 'logically related' events

entitling a person to institute a legal action against another generally are regarded as comprising a transaction or occurrence." *J.C. ex rel. Cook v. Pfizer, Inc.*, No. 3:12-CV-04103, 2012 WL 4442518, at *5 (S.D.W. Va. Sept. 25, 2012). Further, absolute identity of all events giving rise to the claims is unnecessary. *Saval*, 710 F.2d at 1031.

It has already been judicially determined that Plaintiffs' claims against Defendants in the present case are properly joined.  In *In re Nat'l Prescription Opiate Litig.*, No. MDL 2804, 2017 WL 6031547, at *2 (U.S. Jud. Pan. Mult. Lit. Dec. 5, 2017), the United States Judicial Panel on Multidistrict Litigation found that approximately 161 claims by numerous cities, states, and town across the country concerning the alleged improper marketing of and inappropriate distribution of various prescription opiate medications in their communities – similar to Plaintiffs' claims here – involve common questions of fact. *Id.* ("All of the actions can be expected to implicate common fact questions as to the allegedly improper marketing and widespread diversion of prescription opiates into states, counties and cities across the nation ...") The Removing Defendants concede as much because the Removing Defendants "support[ed] centralization" of these claims. *In re Nat'l Prescription Opiate Litig.*, No. MDL 2804, 2017 WL 6031547, at *1. *See also* 28 U.S.C. § 1407(a) (authorizing transfer for coordinated pretrial proceedings when civil actions involve "one or more common questions of fact"). Furthermore, the Removing Defendants designated this case a tag-along action to the MDL and are attempting to have this case transferred to the MDL. Defendants' removal of this case and representations to this Court that Plaintiffs' claims do not share common questions of law or fact completely conflicts with their actions in the MDL and their attempt to transfer this case to the very MDL which Defendants helped create.

As in the MDL, Plaintiffs' claims in this case against the Manufacturer Defendants, Purdue Sales Representative Defendants and Distributor Defendants arise out of the same series of transactions or occurrences and are otherwise logically related. In their Complaint, Plaintiffs allege that: (1) the Manufacturing and Purdue Sales Representative Defendants overstated the benefits and downplayed the risks of the use of their opioids and aggressively marketed these drugs to physicians in and around the Plaintiff Counties, and that (2) the Distributor Defendants failed to monitor, detect, investigate, refuse and report suspicious orders of prescription opiates. (*See* Compl.) Thus, Plaintiffs' claim against the Manufacturing Defendants, the Purdue Sales Representative Defendants, and the Distributor Defendants are logically related and arise out of the same transaction or occurrence as they all involve the improper marketing, distribution and widespread diversion of prescription opiates in and throughout Plaintiffs' communities.

Additionally, Plaintiffs injuries here are indivisible. Thus, the injuries and damages sustained by Plaintiffs relating to Defendants' conduct is "inextricably intertwined" and, therefore, arise from the same series of transactions or occurrences such that joinder of the claims is proper. *Bell v. Werner Enterprises, Inc.*, No. 5:11CV18, 2011 WL 1297115, at *3 (N.D.W. Va. Apr. 5, 2011) (finding claims against separate defendants involving two separate car accidents – the second accident aggravating injuries from the first accident – were properly joined in that the injuries the plaintiff received from the two accidents were inextricably intertwined and accordingly arose from the same series of transactions or occurrences).

The subject claims also involve common questions of fact and law about, *inter alia*, the Manufacturer Defendants, Purdue Sales Representative Defendants, and the Distributor Defendants' knowledge of and conduct regarding the diversion of prescription opiates, as well as the improper marketing of such drugs by the Manufacturer Defendants and their sales

10

representatives, including the Purdue Sales Representatives.   Pursuant to West Virginia law, these Defendants are under an obligation to prevent diversion of opiates and other controlled substances into illicit channels. Plaintiffs assert that these Defendants have failed to adhere to those standards, which caused the diversion of opiates into their communities. Plaintiffs assert common claims against these Defendants relating to public nuisance, negligence, negligent misrepresentation, fraudulent concealment and unjust enrichment.   There    are    also    common questions relating to damages, i.e. what are Plaintiffs' damages and who is responsible.

Defendants' arguments to this Court are further undermined by their previous actions and representations in related opioid litigation. In *The County Commission of McDowell County v. McKesson Corporation et al.*, No. 1:17-cv-00946, at ECF No. 69, the Removing Defendants filed a Notice Regarding Non-Party Fault wherein it asserted that the Manufacturer Defendants were to blame for the opioid crisis. *McDowell County Case*, ECF No. 69 at 2-3, 17-20 ("To the extent the opioid medications delivered by Cardinal Health to pharmacies within the County were improperly dispensed by reason of inadequate instructions or warnings or of false or misleading advertising and promotion by the manufacturers, their actions or omissions caused or contributed to the harm alleged by Plaintiff.") Because of the positions already taken by Defendants in other litigation, a finding of misjoinder here would permit Defendants to play an endless shell game of foisting responsibility upon parties not before the Court, while at the same time arguing these same potential defendants have been improperly joined. Such a result is inherently unfair and unjust to Plaintiffs. It is also illogical for the Removing Defendants to argue that the Manufacturer Defendants are responsible for Plaintiffs damages, while asserting at the same time their liability is so tangential that their joinder was improper.

11

### III. PLAINTIFFS HAVE SUFFICIENTLY DEMONSTRATED MORE THAN A "GLIMMER OF HOPE" OF SUCCEEDING ON THEIR CLAIMS AGAINST THE BOARD DEFENDANTS SUCH THAT THE DOCTRINE OF "FRAUDULENT JOINDER" IS INAPPLICABLE.

#### A. Plaintiffs' Claims Against the BOP are Not Barred by Qualified Immunity.

The starting point for the analysis here is the fundamental tenant in West Virginia that "the general rule of construction in governmental tort legislation cases favor[s] liability, not immunity [and] unless the legislature has clearly provided for immunity under the circumstances, the general common-law goal of compensating injured parties for damages caused by negligent acts must prevail." *Randall v. Fairmont City Police Dep't*, 186 W. Va. 336, 347, 412 S.E.2d 737, 748 (1991). Applying these principles to the facts of this case, Plaintiffs have sufficiently demonstrated a "glimmer of hope" that their claims against the BOP are not barred by qualified immunity.

Qualified immunity, as adopted and applied in West Virginia, is a common law concept. *W.Va. v. Chase Securities*, 424 S.E.2d 591 (W.Va. 1992). West Virginia case law analyzing and applying the various governmental immunities to the vast array of governmental agencies has created a patchwork of holdings. *West Virginia Health and Human Services v. Payne*, 746 S.E.2d 554, 562 (W.Va. 2013). Questions of qualified immunity are fact intensive and must be determined on a case by case basis. *Chase Securities, Inc.* 424 S.E.2d 591 (W.Va. 1992); Syl. Pt 9, *Parkulo v. West Virginia Bd. Of Probation*, 483 S.E.2d 507 (W.Va. 1996). Further, state entities are not entitled to qualified immunity where it can be shown that their actions involved conduct that violated clearly established laws which a reasonable person in their position would have known. *Brown v. City of Montgomery*, 755 S.E.2d 653 (W.Va. 2014). The type of clearly established law or right which can form the basis of a violation sufficient to defeat qualified

immunity can take many forms, including a violation of a state regulation, or the violation of traffic laws. *West Virginia Regional Jail And Correctional Facility Authority v. A.B.*, 766 S.E.2d 751 (W.Va. 2014); *Brown*, 755 S.E.2d 653 (W.Va. 2014).

As alleged in the Complaint, the BOP's conduct at issue in this case violated clearly established laws of which a reasonable official/entity would have known or was otherwise fraudulent, malicious, or otherwise oppressive, and therefore Plaintiffs' claims against the BOP are not barred by qualified immunity. *See Pruitt v. W. Virginia Dep't of Pub. Safety*, 222 W. Va. 290, 299, 664 S.E.2d 175, 184 (2008). Specifically, Plaintiffs allege that the BOP's conduct violated clearly established West Virginia laws and regulations governing the Board of Pharmacy, including the West Virginia Pharmacy Practice Act, W.Va. Code § 30-5-1, *et seq.*; W.Va. Code §§ 30-5-6(d), 30-5-6(f), Code 30-5-6(l), 30-5-6(o); W.Va. Code §§ 60A-3-303, 60A-3-303(a); and W.Va. CSR §§ 15-2-3, 15-2-3.1, 15-2-3.11, 15-2-4. (Compl., ¶¶ 787-790.) Moreover, the requirements set forth in these laws and statutes should be known by public employees and the BOP as the BOP is required to know the fundamental public policies of the state as expressed in statutes. *Brown,* 755 S.E.2d 653.

Resolving all legal uncertainties and issues of law and fact in Plaintiffs' favor, Plaintiffs have sufficiently demonstrated more than a "glimmer of hope" or possibility of success on their claims against the BOP. And that is all that is required to defeat Defendants' assertion of fraudulent joinder.

### B.   Plaintiffs' Claims Against the BOP are Not Barred by the Public Duty Doctrine as the BOP's Conduct Was Willful, Wanton, and Reckless.

The protections of the public duty doctrine are not limitless and its application to Plaintiffs' claims here is inappropriate. In West Virginia, the public duty doctrine does not apply

13

in cases involving willful, wanton, or reckless behavior. *Holsten v. Massey*, 200 W. Va. 775, 786, 490 S.E.2d 864, 875 (1997); *see also*, *Estate of Snyder v. Julian*, 789 F.3d 883, 888 (8th Cir. 2015) (finding that under Missouri law the public duty doctrine is inapplicable in an intentional tort case involving a public employee who acts in bad faith or with malice). Here, Plaintiffs' pleadings clearly allege that the actions and conduct of the BOP were "willful, reckless, intentional, malicious, wanton, and in bad faith." (*See* Compl. ¶¶ 783, 786, 789-791.) Because all legal uncertainties and all issues of law and fact must be resolved in Plaintiffs' favor, the claims against the BOP certainly have at least a "glimmer of hope" for survival in state court, which is all that is required to defeat an assertion of fraudulent joinder. *Rinehart*, 660 F.Supp. at 1141; *Marshall*, 6 F.3d at 233; *Hartley*, 187 F.3d at 426.

## C.   Marshall County is a Proper Venue for Plaintiffs' Claims Against the BOP.

The Removing Defendants' argument that venue must like in Kanawha County is misplaced. The exclusive venue provision of W.Va. Code § 14–2–2 is not applicable to this case because Plaintiffs are only seeking recovery against the BOP from its liability insurance carrier. (Compl., ¶ 54.) *Pittsburgh Elevator Co. v. W. Virginia Bd. of Regents*, 172 W. Va. 743, 744, 310 S.E.2d 675, 676 (1983) ("The exclusive venue provision of W.Va. Code § 14–2–2 is not applicable to a cause of action wherein recovery is sought against the liability insurance coverage of a state agency.").

The Removing Defendants' distorted and misleading interpretation of the Complaint that Plaintiffs are seeking "mandatory, coercive injunctions directing the Board to act in a particular way with respect to its official duties and responsibilities as a State agency" fares no better. The Complaint is clear: Plaintiffs are only seeking compensatory and punitive damages and have not

asserted any type of claim for injunctive relief. (*See* Compl., ¶¶ 45, 49, 56, 819-820, and Demand for Relief). But even if the Removing Defendants' interpretation would be correct (which it is not), § 14-2-2 still does not require venue in Kanawha County. This action is not a "suit attempting to enjoin or otherwise suspend or affect a judgment or decree on behalf of the State obtained in any circuit court" nor is it a "proceeding for injunctive ... relief involving the taking, title, or collection for or prevention of damage to real property." *See* W. Va. Code § 14-2-2(a)(2) and (b).

Moreover, "[v]enue is not a jurisdictional question," and "the right to have a case heard in a particular venue may be waived by any party, including the State." *Hansbarger v. Cook*, 351 S.E.2d 65, 70-71 (W. Va. 1986). Thus, whether the BOP will ultimately insist that venue lie in Kanawha County is for the BOP to decide, not the Removing Defendants, and venue is not, in any event, a bar to suit. At worst, improper venue of the Board of Pharmacy claim should result in transfer, not dismissal. *See*, e.g., *Motto v. CSX Transp., Inc.*, 647 S.E.2d 848, 851 n.4 (W. Va. 2007) (noting that "Circuit Court of Logan County transferred the matter to the Circuit Court of Kanawha County" pursuant to W. Va. Code § 14-2-2). In any event, improper venue would not amount to "no possibility of recovery," which is the relevant standard here.

## D.   Plaintiffs Have Asserted a Legally Viable Claim Against Defendant Potters.

W. Va. Code § 30-5-5 provides: "The members of the [Board of Pharmacy] when acting in good faith and without malice shall enjoy immunity from individual civil liability while acting within the scope of their duties as board members." Accordingly, Plaintiffs may maintain an action against Defendant Potters if he acted in bad faith and/or with malice. In their Complaint, Plaintiffs allege that Defendant Potters breached his duty to Plaintiffs and that his conduct in

doing so was intentional, reckless, malicious, willful, wanton, and in bad faith, and was further carried out with a conscious, reckless, and outrageous indifference to the health, safety, and welfare of Plaintiffs and other residents, citizens, counties, and communities across West Virginia. (Compl., ¶¶ 780-785, 789-791.) Accordingly, after resolving all legal uncertainties and all issues of law and fact in Plaintiffs' favor, Plaintiffs have sufficiently pled a cause of action against Defendant Potters to defeat the Removing Defendants' assertion of fraudulent joinder.

E.   **Plaintiffs' Claims Against the Board Defendants and the Distributor Defendants are Properly Joined.**

Pursuant to West Virginia law, the Distributor Defendants have a duty to inform the BOP of "suspicious orders" when discovered. 15 CSR § 2-4.4. Suspicious orders include orders of unusual size, orders deviating substantially from a normal pattern, and orders of unusual frequency. *Id*. Thus, Plaintiffs' claims against the Distributor Defendants and the Board Defendants are "logically related," and arise from the same series of transactions or occurrences namely the failure to properly identify, report, inspect, alert, investigate and/or follow up on "suspicious orders" and the widespread diversion of opioids in the Plaintiffs' communities. (*See* Compl., ¶¶ 762, 765, 785-790.) *See also*, *In re Nat'l Prescription Opiate Litig.*, 2017 WL 6031547, at *2 ("All of the actions can be expected to implicate common fact questions as to the … widespread diversion of prescription opiates into states, counties and cities across the nation.").

These claims also involve common questions of law or fact including, without limitation: (1) was an order a "suspicious order," (2) did the Distributor Defendants properly notify the BOP about the "suspicious order," (3) what did the Board of Pharmacy do in response to the "suspicious order," (4) whether the Distributor Defendants and BOP had knowledge that opioids

16

were being diverted within the Counties; and (4) what is the extent of Plaintiffs' damages and who is responsible to pay for those damages. *See Wyatt v. Charleston Area Med. Ctr., Inc.*, 651 F. Supp. 2d 492, 498 (S.D.W. Va. 2009) (finding joinder proper when the plaintiff sought to recover for the same damages from all defendants because who is responsible for the plaintiff's injuries, the extent of the plaintiff's injuries, and what caused those injuries were common questions of fact that had to be resolved as to both defendants)

Additionally, for the reasons discussed previously, these claims are properly joined because Plaintiffs have suffered an indivisible injury. *See Bell*, 2011 WL 1297115, at *3.

Like their arguments regarding the joinder of the Manufacturer Defendants, the Removing Defendants arguments here are contradicted by their previous actions and positions. In *McDowell County*, the Removing Defendants asserted that the BOP was to blame in part for the opioid crisis. *See*, e.g., *McDowell County Case*, ECF No. 69 at 24 ("[N]umerous federal, state and local agencies, [including the BOP] had knowledge, or the ability to know, of opioid prescribing and dispensing practices, as well as illegal drug dealing, and had authority to enforce the law. Their failure, individually and collectively, to take timely and effective enforcement action, caused or contributed to the harm alleged by Plaintiff.") Similarly, in a hearing before the District Court for the Southern District of West Virginia, the Removing Defendants argued that the only duty they owed was to regulators such as the BOP, and repeatedly laid blame at the feet of the BOP for its violations of clearly established laws. *See*, e.g., *Cabell County Commission v. AmerisourceBergen Drug Corporation*, No. 3:17- cv-01665, ECF No. 70. Thus, Defendants' arguments that the BOP is misjoined is unavailing and should be rejected.

17

IV.   **PLAINTIFFS HAVE SUFFICIENTLY PLED A VALID CAUSE OF ACTION AGAINST THE MEDICAL DEFENDANTS AND THEIR INCLUSION IN THIS LAWSUIT IS PERMITTED BY THIS COURT'S LIBERAL JOINDER RULES.**

    A.   **Assuming *Arguendo* that Plaintiffs' Claims Against the Medical Defendants are Governed by the MPLA (which they are not), the Removing Defendants' Argument is Without Merit as Plaintiffs Fully Complied with the MPLA's Pre-Suit Requirements.**

Defendants' argument that Plaintiffs failed to comply with the MPLA misrepresents the record. (Notice, ¶ 29.) Plaintiffs have fully complied with the MPLA's pre-suit requirements by serving a Notice of Claim and Screening Certificate upon each of the Medical Defendants.[2] (*See* Screening Certificate and Notice of Claim for each individual Medical Defendant attached hereto collectively as Exhibit 3.)

    B.   **The Medical Defendants Are Properly Joined.**

Plaintiffs' claims against the Distributor Defendants and the Medical Defendants all relate to the widespread diversion of opioids within the Plaintiffs' communities which contributed to the opioid epidemic in the Plaintiffs' counties and the resulting public nuisance and harm. As prescribers and distributors, each set of defendants played a pivotal role in the opioid epidemic. And because it is a "closed system," one could not exist without the other.  In order for the pills to be distributed, they must first be prescribed.  As such, Plaintiffs' claims are "logically related," and arise from the same series of transactions or occurrences namely the widespread diversion of opioids. *See In re Nat'l Prescription Opiate Litig.*, 2017 WL 6031547, at *2. These claims also

---

[2]      Plaintiffs assert that their claims against the Medical Defendants are not governed by the MPLA because they do not arise from (1) *legitimate* health care services rendered, or which should have been rendered, by a health care provider or health care facility to a patient, or (2) health care or health care services because the claims involve the improper and illegal prescribing of opioid pain medications for no legitimate medical purpose. (Compl., ¶ 796.) Plaintiffs followed the pre-suit requirements of the MPLA out of an abundance of caution in the event the Court would determine the MPLA applied.  (Compl., ¶ 808).

involve common questions of law or fact including, without limitation: (1) was the underlying prescription written by the Medical Defendant valid and proper, (2) should the Distributor Defendants identified any "suspicious orders" by the Medical Defendants, (3) whether the Distributor Defendants and Medical Defendants had knowledge that opioids were being diverted within the Counties; and (4) what is the extent of Plaintiffs damages and who is responsible to pay for those damages. *See Wyatt*, 651 F. Supp. 2d at 498.

Additionally, Plaintiffs have alleged they suffered an indivisible injury. As such, these claims are properly joined because Plaintiffs' injuries are "inextricably intertwined" and thus arise from the same series of transactions or occurrences. *See Bell*, 2011 WL 1297115, at *3.

Finally, just like their arguments relating to the joinder of Plaintiffs' claims against the Manufacturer Defendants and the BOP, the Removing Defendants' position here is undermined by its prior attempts to blame the prescribing physicians for the opioid epidemic in other opioid related litigation. *See*, e.g., *McDowell County*, ECF No. 67 at 3, 4-7 ("If Plaintiff has been damaged as a result of prescription opioid and heroin abuse, as Plaintiff alleges, it would be, in part at least, because prescribing practitioners wrote prescriptions for controlled substances to McDowell County residents for other than a medically necessary purpose.")

## V. THIS COURT SHOULD REFRAIN FROM SEVERING PLAINTIFFS' CLAIMS AGAINST THE DIVERSE DEFENDANTS UNDER RULE 21 OF THE FEDERAL RULES OF CIVIL PROCEDURE

"Federal courts have frowned on using the Rule 21 severance vehicle to conjure removal jurisdiction that would otherwise be absent." *Brown v. Endo Pharm., Inc.,* No. 14–0207-WS-B, 2014 WL 3864626, at *7 (S.D.Ala. Aug. 5, 2014) (collecting cases). Judicial reluctance to employ Rule 21 in the removal context stems from the concern that application of Rule 21 would circumvent the strict constraints of the removal statute and improperly

expand diversity jurisdiction where it does not exist. *E.g., Phillips v. R.R. Dawson Bridge Co., LLC,* No. 2:14–cv–00480–LSC, 2014 WL 3970176, at *5 (N.D.Ala. Aug. 12, 2014). These concerns are compelling reasons and counsel against the application of Rule 21 on the facts of this case.

Additionally, severing these claims would serve to force Plaintiffs to needlessly incur additional expenses, litigate the same claims for the same damages in two separate venues, while at the same time allowing Defendants to argue that non-parties are responsible for Plaintiffs harm and damages. Further, the Removing Defendants' claims of efficiency are overstated as there are already claims pending against Defendants in other state courts and there will undoubtedly be coordination between the MDL and the state claims regarding discovery.  As such, this Court should refrain from severing Plaintiffs' claims and avoid the manufacture of federal jurisdiction at Defendants' behest.

## CONCLUSION

For all the foregoing reasons, the Removing Defendants have failed to meet their heavy burden of proving federal jurisdiction. After resolving all legal uncertainties and issues of law and fact in Plaintiffs' favor, Plaintiffs have sufficiently demonstrated a "glimmer of hope" or mere possibility of success on their claims against the Non-Diverse Defendants. Accordingly, this Court lacks subject matter jurisdiction and this Case should be remanded to the Circuit Court of Marshall County, West Virginia where it properly belongs.


\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Respectfully Submitted,

**BROOKE COUNTY COMMISSION, HANCOCK COUNTY COMMISSION, HARRISON COUNTY COMMISSION, LEWIS COUNTY COMMISSION, MARSHALL COUNTY COMMISSION, OHIO COUNTY COMMISSION, TYLER COUNTY COMMISSION,** and **WETZEL COUNTY COMMISSION,** *Plaintiffs*

By:     */s/ Clayton J. Fitzsimmons*
         Robert P. Fitzsimmons (WV Bar # 1212)
         Clayton J. Fitzsimmons (WV Bar # 10823)
         Mark A. Colantonio (WV Bar #4238)
         **FITZSIMMONS LAW FIRM PLLC**
         1609 Warwood Avenue
         Wheeling, WV 26003
         Telephone: (304) 277-1700
         Fax:  (304) 277-1705

         Paul J. Napoli
         Hunter J. Shkolnik
         Joseph L. Ciaccio
         Shayna E. Sacks
         Salvatore C. Badala
         **NAPOLI SHKOLNIK, PLLC**
         400 Broadhollow Road – Suite 350
         Melville, New York 11747
         (*Motions  for Pro Hac Vice to be filed*)

         Jonathan E. Turak (WV Bar # 3816)
         **GOLD, KHOUREY & TURAK**
         510 Tomlinson Ave.
         Moundsville, WV 26041

         Daniel J. Guida  (WV Bar #4604)
         **GUIDA LAW OFFICE**
         3374 Main St.
         Weirton, WV 26062

         Joseph F. Shaffer (WV Bar # 6805)
         Samuel D. Madia (WV Bar # 10819)
         **SHAFFER MADIA LAW PLLC**
         343 West Main Street
         Clarksburg, WV 26301

         ***Counsel for Plaintiffs***

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
### (WHEELING DIVISION)

| | |
|---|---|
| BROOKE COUNTY COMMISSION,<br>HANCOCK COUNTY COMMISSION,<br>HARRISON COUNTY COMMISSION,<br>LEWIS COUNTY COMMISSION,<br>MARSHALL COUNTY COMMISSION,<br>OHIO COUNTY COMMISSION,<br>TYLER COUNTY COMMISSION, and<br>WETZEL COUNTY COMMISSION, | Civil Action No. 5:18-cv-9<br>Civil Action No. 5:18-cv-10<br>Civil Action No. 5:18-cv-11<br>Civil Action No. 5:18-cv-12<br>Civil Action No. 5:18-cv-13<br>Civil Action No. 5:18-cv-14<br>Civil Action No. 5:18-cv-15<br>Civil Action No. 5:18-cv-16 |

                 Plaintiffs,

vs.

PURDUE PHARMA L.P.; PURDUE PHARMA              Judge John Preston Bailey
INC.; THE PURDUE FREDERICK
COMPANY, INC.; MARK RADCLIFFE;
MARK ROSS; PATTY CARNES; TEVA
PHARMACEUTICALS USA, INC.;
CEPHALON, INC.; JANSSEN
PHARMACEUTICALS, INC.; ORTHO-
MCNEIL-JANSSEN PHARMACEUTICALS,
INC. n/k/a Janssen Pharmaceuticals, Inc.;
JANSSEN PHARMACEUTICA, INC. n/k/a
Janssen Pharmaceuticals, Inc.; JOHNSON &
JOHNSON; ENDO HEALTH SOLUTIONS
INC.; ENDO PHARMACEUTICALS, INC.;
ALLERGAN plc; ACTAVIS plc;  ACTAVIS,
INC.; ACTAVIS LLC; ACTAVIS PHARMA,
INC.; WATSON PHARMACEUTICALS, INC.;
WATSON PHARMA, INC.; WATSON
LABORATORIES, INC.; MCKESSON
CORPORATION; CARDINAL HEALTH,
INC.; AMERISOURCEBERGEN DRUG
CORPORATION; RITE AID OF
MARYLAND, INC.; KROGER LIMITED
PARTNERSHIP II; CVS INDIANA, L.L.C.;
WAL-MART STORES EAST, LP; GOODWIN
DRUG COMPANY; WEST VIRGINIA
BOARD OF PHARMACY; DAVID
POTTERS; EDITA P. MILAN, M.D.;
TRESSIE MONTENE DUFFY, M.D.;
EUGENIO ALDEA MENEZ, M.D.;
SCOTT JAMES FEATHERS, D.P.M.; and
AMY LYNN BEAVER, P.A.-C,
              Defendants.

## CERTIFICATE OF SERVICE

The undersigned counsel for Plaintiffs hereby certifies that on January 24, 2018, a true copy of the foregoing document was electronically filed with the Clerk of this Court using the CM/ECF system, who shall provide electronic notice of such filing to the counsel of record.

Respectfully Submitted,

**BROOKE COUNTY COMMISSION, HANCOCK COUNTY COMMISSION, HARRISON COUNTY COMMISSION, LEWIS COUNTY COMMISSION, MARSHALL COUNTY COMMISSION, OHIO COUNTY COMMISSION, TYLER COUNTY COMMISSION, and WETZEL COUNTY COMMISSION,** *Plaintiffs*

By:    */s/ Clayton J. Fitzsimmons*
Robert P. Fitzsimmons (WV Bar # 1212)
Clayton J. Fitzsimmons (WV Bar # 10823)
Mark A. Colantonio (WV Bar #4238)
**FITZSIMMONS LAW FIRM PLLC**
1609 Warwood Avenue
Wheeling, WV 26003
Telephone: (304) 277-1700
Fax:  (304) 277-1705

Paul J. Napoli
Hunter J. Shkolnik
Joseph L. Ciaccio
Shayna E. Sacks
Salvatore C. Badala
**NAPOLI SHKOLNIK, PLLC**
400 Broadhollow Road – Suite 350
Melville, New York 11747
(*Motions for Pro Hac Vice to be filed*)

Jonathan E. Turak (WV Bar # 3816)
**GOLD, KHOUREY & TURAK**
510 Tomlinson Ave.
Moundsville, WV 26041

Daniel J. Guida  (WV Bar #4604)
**GUIDA LAW OFFICE**
3374 Main St.
Weirton, WV 26062

Joseph F. Shaffer (WV Bar # 6805)
Samuel D. Madia (WV Bar # 10819)
**SHAFFER MADIA LAW PLLC**
343 West Main Street
Clarksburg, WV 26301

*Counsel for Plaintiffs*