**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**
**WHEELING DIVISION**

BROOKE COUNTY COMMISSION; HANCOCK
COUNTY COMMISSION; HARRISON COUNTY
COMMISSION; LEWIS COUNTY
COMMISSION; MARSHALL COUNTY
COMMISSION; OHIO COUNTY COMMISSION;
TYLER COUNTY COMMISSION; and WETZEL
COUNTY COMMISSION,

                *Plaintiffs*,

     v.

PURDUE PHARMA L.P.; PURDUE PHARMA
INC.; THE PURDUE FREDERICK COMPANY,
INC.; MARK RADCLIFFE; MARK ROSS;
PATTY CARNES; TEVA PHARMACEUTICALS
USA, INC.; CEPHALON, INC.; JANSSEN
PHARMACEUTICALS, INC.; ORTHO-MCNEIL-
JANSSEN PHARMACEUTICALS, INC., n/k/a
Janssen Pharmaceuticals, Inc.; JANSSEN
PHARMACEUTICA, INC., n/k/a Janssen
Pharmaceuticals, Inc.; JOHNSON & JOHNSON;
ENDO HEALTH SOLUTIONS INC.; ENDO
PHARMACEUTICALS, INC.; ALLERGAN plc;
ACTAVIS plc; ACTAVIS, INC.; ACTAVIS, LLC;
ACTAVIS PHARMA, INC.; WATSON
PHARMACEUTICALS, INC.; WATSON
PHARMA, INC.; WATSON LABORATORIES,
INC.; MCKESSON CORPORATION; CARDINAL
HEALTH, INC.; AMERISOURCEBERGEN
DRUG CORPORATION; RITE AID OF
MARYLAND, INC.; KROGER LIMITED
PARTNERSHIP II; CVS INDIANA, L.L.C.; WAL-
MART STORES EAST, LP; GOODWIN DRUG
COMPANY; WEST VIRGINIA BOARD OF
PHARMACY; DAVID POTTERS; EDITA P.
MILAN, M.D.; TRESSIE MONTENE DUFFY,
M.D.; EUGENIO ALDEA MENEZ, M.D.; SCOTT
JAMES FEATHERS, D.P.M.; and AMY LYNN
BEAVER, P.A.-C,

                *Defendants*.

Civil Action No. 5:18-cv-00009
Civil Action No. 5:18-cv-00010
Civil Action No. 5:18-cv-00011
Civil Action No. 5:18-cv-00012
Civil Action No. 5:18-cv-00013
Civil Action No. 5:18-cv-00014
Civil Action No. 5:18-cv-00015
Civil Action No. 5:18-cv-00016

Judge:  John Preston Bailey

**DEFENDANTS CARDINAL HEALTH, INC., AMERISOURCEBERGEN DRUG CORPORATION, AND MCKESSON CORPORATION'S RESPONSE IN OPPOSITION TO PLAINTIFFS' "EMERGENCY" MOTION TO REMAND**

Defendants Cardinal Health, Inc., AmerisourceBergen Drug Corporation, and McKesson Corporation ("Removing Defendants") oppose Plaintiffs' motion to remand this action to the Circuit Court of Marshall County, West Virginia.  Plaintiffs' lawsuits are no different than several hundred lawsuits already coordinated in the Opiate Multidistrict Litigation pending in the Northern District of Ohio.  Just as do those hundreds of other political subdivisions, including other West Virginia cities and counties, these eight West Virginia counties seek to lay blame and liability for the wide-ranging social ills caused by prescription opioid abuse on seven out-of-state wholesale distributors of pharmaceutical products ("Distributor Defendants").[1]  Federal diversity jurisdiction exists precisely for this type of case, in which local passions risk being inflamed against unpopular outsiders.  *See Bank of United States v. Deveaux*, 9 U.S. 61, 87–88 (1809) (Marshall, C.J.).   The Counties do not deny that their claims against Distributor Defendants, standing alone, would be removable under 28 U.S.C. §§ 1332 and 1441.

But, in a gambit to defeat diversity jurisdiction and deny out-of-state Distributor Defendants a federal forum, the Counties have added as defendants West Virginia physicians ("Medical Defendants")[2] and West Virginia-based sales representatives ("Sales Rep

---

[1]   The "Distributor Defendants" include: McKesson Corporation, Cardinal Health, Inc., AmerisourceBergen Drug Corporation, Rite Aid of Maryland, Inc., Kroger Limited Partnership II, CVS Indiana, LLC, and Wal-Mart Stores East, LP.

[2]   The "Medical Defendants" include:  Edita P. Milan, MD, Tressie Montene Duffy, MD, Eugenio Aldea Menez, MD, Scott James Feathers, DPM, and Amy Lynn Beaver, PA-C.

Defendants")[3] of one of the Manufacturer Defendants,[4] none of which Medical and Sales Rep Defendants are alleged to have any connection to Distributor Defendants beyond the theory that all contributed in some way to the "opioid epidemic."  The Counties also have added the West Virginia Board of Pharmacy ("BOP") and its former Executive Director, (collectively, the "Board Defendants"), notwithstanding the virtual impossibility that the BOP ever could be held liable as an arm of the State for the performance of its regulatory duties.  Finally, in a last-ditch bid to evade federal diversity jurisdiction, the Counties have added a defunct West Virginia distributor with a negligible market share, which has not been licensed to distribute any controlled substances in the State of West Virginia in more than two years.

The right to a federal forum is not so easily defeated, for two independent reasons.  *First*, the fraudulent joinder doctrine, well-recognized for more than a century, permits removal where there is no possibility that the plaintiffs will be able to maintain a cause of action against the nondiverse defendant.  *Second*, the fraudulent (or procedural) *mis*joinder doctrine recognizes that removal is appropriate where a nondiverse defendant has no real connection to the underlying controversy.  Under either doctrine, remand will not be granted so long as complete diversity exists between the plaintiffs and all ***properly joined*** defendants.  The nondiverse parties named

---

[3]   The "Sales Rep Defendants" include: Mark Radcliffe, Mark Ross, and Patty Carnes.

[4]   The Manufacturer Defendants, all of which are diverse from Plaintiffs, include:  Purdue Pharma LP, Purdue Pharma Inc., The Purdue Frederick Company, Inc., Teva Pharmaceuticals USA, Inc., Cephalon, Inc, Janssen Pharmaceuticals, Inc., Ortho-McNeil-Janssen Pharmaceuticals, Inc., n/k/a Janssen Pharmaceuticals, Inc., Janssen Pharmaceutia, Inc., n/k/a Janssen Pharmaceuticals, Inc., Johnson & Johnson, Endo Health Solutions Inc., Endo Pharmaceuticals Inc., Allergan PLC, Actativs PLC, Actavis, Inc., Actavis, LLC, Actavis Pharma, Inc., Watson Pharmaceuticals, Inc., Watson Pharma, Inc., and Watson Laboratories, Inc.   Because the Manufacturer Defendants are all diverse from Plaintiffs, the presence of the Manufacturer Defendants in this action does not present any barrier to this Court exercising diversity jurisdiction, and the Court need not address the presence of the Manufacturer Defendants in order to decide Plaintiffs' remand motion.

here are not within the limited array of proper defendants, either because they have been fraudulently joined or because they have been fraudulently misjoined, or both.  At a minimum, this Court should exercise its discretion under Rule 21 to sever the claims of the nondiverse defendants from the diverse defendants so as to maintain Distributor Defendants' right to a federal forum.

This is not the first time a West Virginia federal court has addressed an attempt like the Counties' to defeat federal jurisdiction in the opioid litigation.  Recently, confronted with a similar attempt to defeat diversity removal by Distributor Defendants, Judge David A. Faber of the U.S District Court for the Southern District of West Virginia denied remand to the plaintiff county in *County Commission of McDowell County v. McKesson Corporation*, 263 F. Supp. 3d 639 (S.D. W. Va. 2017).  Judge Faber relied on both fraudulent joinder and fraudulent misjoinder to separate claims against diverse Distributor Defendants from a non-diverse physician.  The same conclusion is appropriate here.

## BACKGROUND

### A.    The Counties' Action

The Counties assert different bases for liability against the defendant groups, depending on their respective commercial roles.  As to the Manufacturer Defendants and their sales representatives, the Counties allege "that their promotion and marketing of opioids was false and misleading," so as to be "deceptive . . . unlawful, unfair, and fraudulent," Compl. ¶ 681.  The Counties contend that the Medical Defendants engaged in "improper and illegal prescribing . . . of opioids into the Counties," *id.* ¶ 684, and that the Board Defendants "fail[ed] to act upon and/or investigate suspicious orders and . . . fail[ed] to prevent the abuse and/or diversion of opioids into and through the Counties, *id.* ¶ 683.  Promotion and marketing of a medication are different acts from a physician prescribing one, which in turn is different from the government regulating the

stream of commerce in which the medication is placed.  Different still is the role of Distributor

Defendants, who are alleged to have "over-distribut[ed] opioids into the Counties."  *Id.* ¶ 682.  No

factual or legal basis connects the alleged claims against the various defendant groups, other than

that they each have a distinct role in the opioid supply chain, which roles subject each set of

defendants to distinct legal obligations.

### B.  The Multidistrict Litigation

The Counties' cases are part of a wave of similar actions nationwide that have been

centralized for pretrial purposes in *In re National Prescription Opiate Litigation*, MDL No. 2804

(N.D. Ohio) ("Opiate MDL").  Presently pending in the Opiate MDL proceeding are more than

340 cases.

The Counties filed these cases eight days ***after*** the Judicial Panel on Multidistrict

Litigation created the Opiate MDL to coordinate cases of this kind.  Removing Defendants were

served with the unified Complaint on December 19, 2017, and, within the thirty days permitted,

*see* 28 U.S.C. § 1446(b), on January 18, 2018, they timely filed a Notice of Removal (ECF No. 1)

to this Court.  They did so in part to secure the benefits of the MDL proceeding.  *See In re Nat'l*

*Prescription Opiate Litig.*, MDL No. 2804, 2017 WL 6031547, at *2 (J.P.M.L. Dec. 5, 2017)

(hereinafter "Initial Transfer Order") (finding that to allow the opioid-related cases to proceed

independently across myriad districts would raise a significant risk of inconsistent rulings and

inefficient pretrial proceedings).

Just six days later, on January 24, 2018, the Counties filed the instant motion (ECF No. 5),

mischaracterizing the removal as "hasty," *id.* at ¶ 7, and mischaracterizing the motion as an

"emergency" motion.  There is no emergency, however—only the Counties' urgent desire to

avoid pretrial coordination through the MDL proceeding, although the Counties chose as their

counsel a lawyer who elected to serve as a member of the MDL Plaintiffs' Executive Committee.

5

The JPML has held repeatedly that the pendency of a motion to remand is not grounds to deny or delay transfer to the MDL.  Initial Transfer Order at *2.  The JPML has already transferred to the Opiate MDL many cases in which remand motions were pending.  And the MDL court has explained that, in the interests of attempting to secure an early global resolution of the litigation, "it would be better to leave the motions pending for the time being" with the court later addressing them in due course and in a consistent manner.  *In re Nat'l Prescription Opiate Litig.*, No. 1:17-md-02804 (N.D. Ohio Dec. 14, 2017), ECF No. 4, at 2 (Minutes & Scheduling Order).  The Counties contend that they will be "severely prejudiced . . . . if the Court does not immediately rule upon the instant action," ECF No. 5 at ¶ 9.  Facing similar claims and similar defendants, the Eastern District of Kentucky determined that a hurried remand decision would needlessly risk inconsistent rulings between these cases and others that are in the MDL or will be filed in the future and that the transferee court can and will rule on their motion to remand.  *See The Cnty. of Floyd v. Purdue Pharma L.P., et al.*, No. 7:17-cv-00186 (E.D. Ky. Jan. 22, 2018), ECF No. 10-1 (Exhibit B to Removing Defendants' Motion to Stay).  The same result should obtain here.

## ARGUMENT

There are no properly-joined nondiverse defendants in the Counties' suits.

- The claims against the Medical Defendants and the Sales Rep Defendants are fraudulently misjoined because none of those defendants are alleged to have any connections to Distributor Defendants beyond the theory that all contributed in some way to the "opioid epidemic."

- The claims against the Sales Rep Defendants also are fraudulently joined because they are nominal parties who are alleged to have acted only in their capacity as agents of manufacturer Purdue.

- The claims against the BOP and its former Executive Director are fraudulently joined because the BOP cannot be held liable for damages for the performance of its regulatory duties.

- Finally, the Counties' claims against an eighth distributor, Goodwin Drug, are fraudulently joined because Plaintiffs allege no specific wrongdoing by Goodwin, it has not been licensed to distribute controlled substances in more than two years, and it had a negligible market share even when it did distribute opioids.

## I.   THE MEDICAL DEFENDANTS ARE FRAUDULENTLY MISJOINED.

The doctrine known as fraudulent or procedural misjoinder "provides an exception to the complete diversity rule." *Zirkle v. Valley Forge Ins. Co.*, No. 1:15CV82, 2015 WL 4729327, at *3 (N.D. W. Va. Aug. 10, 2015). The doctrine recognizes "that claims against certain defendants, while provable, have no real connection to the claims against other defendants in the same action and were only included to defeat diversity jurisdiction and removal." *Id.* (citation and internal quotation marks omitted).

To determine if the claims against disparate defendants are "transactional[ly] related[]," *State ex rel. Energy Corp. of Am. v. Marks*, 774 SE.2d 546, 550 (W. Va. 2015), a court must consider "the nature of the claims, the legal basis for recovery, the law involved, and the respective factual backgrounds." *Ross v. Bd. of Educ. of Twp. High Sch. Dist. 211*, 486 F.3d 279, 284 (7th Cir. 2007). At bottom, the inquiry asks if the claims "'involve enough related operative facts to make joinder in a single case fair.'" *Marks*, 774 S.E.2d at 551 (quoting Moore's Federal Practice, § 20.04, at 20–30). That is, claims may arise out of the same transaction or occurrence "if there is a 'substantial evidentiary overlap' between them." *Id.* (quoting *Klamath Irrigation Dist. v. United States*, 113 Fed. Cl. 688, 707 (Ct. Fed. Cl. 2013)).

Here, the respective claims arise from different types of transactions sharing no common questions of fact or law. The claims against the Medical Defendants are malpractice claims. To prove them, the Counties must offer evidence about individual patients and whether they had a legitimate medical need for opioids. *See* Compl. ¶¶ 799–804. These patient encounters, through which the patients obtained opioid prescriptions, constitute the underlying "transactions" from

which the Counties' claims against the Medical Defendants arise. *Cf. Janssen Pharmaceutica, Inc. v. Armond*, 866 So. 2d 1092, 1101 (Miss. 2004) ("[T]he transaction or occurrence . . . is each doctor's prescribing Propulsid to each plaintiff.").

To prove their claims against Distributor Defendants, the Counties will have to show that Distributors violated statutory duties to report "suspicious" opioid orders placed, not by the Medical Defendants, but by the licensed pharmacies that the distributors supply. *See, e.g.*, Compl. ¶¶ 764–66. The evidence relevant to these claims are the size, frequency, and nature of the wholesale orders placed by the pharmacy customers and Distributor Defendants' anti-diversion procedures. There is thus no "substantial evidentiary overlap" among the claims against Distributors and the Medical Defendants because they call for fundamentally different legal and factual inquiries.

In addition, the claims against the Medical and Distributor Defendants do not share a common question of law because the alleged liability of one set of defendants "has no bearing" on the liability of the other. See *Hughes v. Sears, Roebuck & Co.*, No. 2:09-CV-93, 2009 WL 2877424, at *6 (N.D. W. Va. Sept. 3, 2009); *see also Marks*, 774 S.E.2d at 551 (plaintiffs could not join negligence claims against a trucking company arising out of a car accident with claims against insurer for medical coverage of injuries sustained in accident because truck driver's negligence "ha[d] no bearing" on insurer's duty to cover medical costs).

Confronted with the same scenario, Judge Faber denied McDowell County's motion to remand. *McDowell Cnty.*, 263 F. Supp. 3d 639. He found that the claims against Dr. Cofer, the opioid-prescribing physician in that case, arose "out of different transactions, involve[d] different evidence, and rest[ed] on different legal theories than the claims against the diverse [distributor] defendants." *Id.* at 646. Judge Faber held that, because the claims against the nondiverse doctor were too attenuated from the claims against the distributor defendants, "[t]he cases against each are

separate and distinct," and he severed and dismissed without prejudice the claims against Dr. Cofer.  *Id.* at 647.  In so holding, Judge Faber relied on *Hughes v. Sears, Roebuck & Co.*, No. 2:09-CV-93, 2009 WL 2877424 (N.D. W. Va. Sept. 3, 2009), where this Court severed and remanded the plaintiffs' malpractice claims against an in-state physician—alleging misdiagnosis of injuries sustained in a treadmill fall—from product-defect claims against the out-of-state manufacturer.

This Court concluded in *Hughes* that there was no "bridge to provide a persuasive argument that the medical malpractice and products liability clams arise out of the same transaction or occurrence."  2009 WL 2877424, at *6.  "[T]he evidence supporting these claims will be markedly different," the Court noted, and no common question of law existed because "any liability that may be found against [the nonresident defendants or the in-state physician] would not be a basis for liability as to the other, and separate liability as to each could be found." *Id.*

Here, the Medical Defendants' alleged malpractice has no greater nexus to Distributor Defendants' anti-diversion practices than the *Hughes* doctor's malpractice had to the treadmill manufacturer's negligence.  As Judge Faber found:

> [T]he connection, if any, between the actions of the corporate defendants, who allegedly flooded the market with opioids, and Dr. Cofer, who prescribed some of them, is far more attenuated than any connection between the manufacturers and seller of the treadmill in *Hughes* and the subsequent misdiagnosis by the treating physician.

*Id.* at 646-47.

The Counties do not dispute that the Medical Defendants' alleged misconduct is distinct from that of Distributor Defendants.  Instead, the Counties assert that the "opioid epidemic" constitutes a single, monolithic transaction or occurrence that suffices to join any claims relating in any way to that social phenomenon.  *See* Remand Br. at 18.  Judge Faber rejected such an all-

encompassing view of what constitutes a transaction. *See McDowell Cnty.*, 263 F. Supp. 3d 639; *United States v. Pittman*, 209 F.3d 314, 318 (4th Cir. 2000); *see also reFX Audio Software Inc. v. Doe*, No. 13-C-1790, 2014 WL 1293816, at *5 (N.D. Ill. Mar. 24, 2014) ("Courts must avoid viewing the transaction-or-occurrence standard at 'too high a level of generality,' lest claims be capaciously joined in one lawsuit even though the only thing they have in common is a solitary fact or set of facts that are not tied together in both law and in fact.").

What is left is the Counties' argument that they have "suffered an indivisible injury," such that all the defendants are each liable for the same harms. Remand Br. 19. Federal and state courts alike, however, have rejected the notion that a mere allegation of common damages satisfies Rule 20, even in cases involving truly indivisible harms, such as physical injuries to individuals. *See Hughes*, 2009 WL 2877424, at *5 (rejecting argument that "determination and apportionment of damages" present "questions of law and fact common to all the defendants"); *Marks*, 774 S.E. 2d at 546, 554 (rejecting argument that "amount of damages sustained" was common question).

In any event, the damages attributable to the Defendant groups are different. The individual Medical Defendants can be liable only for damages flowing from improper prescriptions **each** wrote for **his or her** patients. By contrast, the Counties seek to hold Distributor Defendants liable for public harms allegedly caused by the entire epidemic, based on their shipment of opioids since 2007. Given the extent of the Counties' sweeping prayer for relief, the supposed commonality of their damages cannot hold together these unrelated claims against unrelated defendants.

## II.   THE SALES REP DEFENDANTS ARE FRAUDULENTLY MISJOINED AND FRAUDUENTLY JOINED.

### A.   The Sales Rep Defendants are Fraudulently Misjoined.

Plaintiffs allege that Manufacturer Purdue's allegedly authorized agents—the Sales Rep Defendants, who are citizens of West Virginia—over-promoted opioid medications.[5]  But the Counties do not plausibly allege any connection between the alleged wrongful conduct of the Sales Rep Defendants and that of Distributor Defendants and do not plausibly allege relevant contact, communication, cooperation, or connection of any kind whatsoever between any of the Sales Rep Defendants and any Distributor Defendant.  The claims against the Sales Rep Defendants—based on deceptive marketing to physicians—arise out of a different set of legal duties owed by differently-situated persons who lack sufficient connection to the alleged wrongful acts of Distributor Defendants.

The allegations in the Complaint do not factually connect the Sales Rep Defendants to any shared transaction or occurrence with any Distributor Defendant.  The allegations against the Sales Rep Defendants concern their interaction with physicians, while the allegations against Distributor Defendants concern their interaction with pharmacies that allegedly placed "suspicious" orders.  The two have no necessary connection.  Thus, the required "substantial evidentiary overlap" between those two sets of claims is lacking for Rule 20 purposes.  That both

---

[5] To the extent relevant, the respective claims against the Manufacturer Defendants and Distributor Defendants do not involve common questions of law or fact.  Whereas the Counties' allegations against Distributor Defendants relate to their alleged noncompliance with statutory requirements to report suspicious orders, *see, e.g.*, Compl. ¶¶ 764–66, the allegations against the Manufacturing Defendants focus on allegations that they illegitimately sought to expand the market for the opioids they produce to encourage the sale of those products in a manner inconsistent with their reasonably safe and effective use.  *See, e.g.*, Compl. ¶¶ 707, 712, 716, 730–33, 737, 741, 747–48.  However, because all of the Manufacturer Defendants are diverse from Plaintiffs, the Court need not address the Manufacturer Defendants' presence in this action to resolve Plaintiffs' remand motion.

sets of allegations involve opioid medications treats transactional relatedness at too high a level of generality.  *See Pittman*, *supra*, 209 F.3d at 318.

The claims against these two defendant groups also involve fundamentally different questions of law.  The Distributor Defendants' alleged duty was to report (and not ship) "suspicious" orders.  The Sales Rep Defendants' alleged duty, on the other hand, was not to misrepresent the addictive properties of prescription opioids.  As in *Hughes*, the legal resolution of the one "has no bearing" on the other.  *Hughes*, 2009 WL 2877424, at *6.  The two sets of claims therefore do not meet the Rule 20 standard for joinder.

### B.    The Sales Rep Defendants are Fraudulently Joined.

The doctrine of fraudulent joinder is "an exception to the well-pleaded complaint rule" that "requires the court to disregard the citizenship of a party who is deemed to have been fraudulently joined."  *McDowell Cnty.*, 263 F. Supp. 2d at 644.  A defendant is fraudulently joined if "there is no possibility that the plaintiff would be able to establish a cause of action against the in-state defendant."  *Johnson v. Am. Towers, LLC*, 781 F.3d 693, 704 (4th Cir. 2015); *Conrad v. Ocwen Loan Servicing, LLC*, No. 1:17cv53, 2017 WL 3185142, at *3 (N.D. W. Va. July 26, 2017).

The Sales Rep Defendants are fraudulently joined because the claims against them allege that they acted within the scope of their agency to the benefit of Purdue.  *See* syl. pt. 2, *Lowance v. Johnson*, 84 S.E. 937 (W. Va. 1915) ("If a person, assuming to be agent of another, performs for him an act, which he afterwards ratifies by receiving the benefits derived from it, the principal thereby becomes liable for the torts committed by the agent, within the scope of his assumed authority, in performing the act.  The principal cannot accept the benefits, without also bearing the burdens, of the agent's acts.").  Purdue is therefore the real party in interest, rendering the Sales Rep Defendants merely nominal parties whose residence can be ignored for purposes of

determining the existence of federal subject matter jurisdiction.  *See Hartford Fire Ins. Co. v. Harleysville Mut. Ins. Co.*, 736 F.3d 255, 259–60 (4th Cir. 2013) (adopting "nominal party exception to the rule of unanimity necessary for removal" where "fundamental inquiry" is whether the party has "no immediately apparent stake in the litigation").

Certainly, in an appropriate case, an agent can be held liable for his own acts, as the Counties illustrate by their citation to *Travis v. Alcon Labs., Inc.*, 504 S.E.2d 419 (W. Va. 1998). In *Travis*, however, the agent faced potential liability for having allegedly intentionally inflicted emotional distress on the plaintiff, an employee of the principal that the agent supervised.  The agent did not mistreat the plaintiff at the direction of the principal-employer; the salient question in that case was instead whether the employer could be held vicariously liable for the agent's outrageous actions on a ratification theory.  Here, by contrast, the allegations are not that the Sales Rep Defendants acted on their own to injure the Counties.  The only allegations about the Sales Rep Defendants are that they acted under the exclusive direction and control of their employer for their employer's benefit.  Under those circumstances, it would be an unsupported extension of agency law and inequitable to hold the Sales Rep Defendants personally liable.[6]

## III.   THE BOARD DEFENDANTS ARE FRAUDLENTLY MISJOINED AND FRAUDLENTLY JOINED.

### A.   The Board Defendants are Fraudulently Misjoined.

The claims against the Board Defendants do not arise out of the same act, transaction, or occurrence as those against Distributor Defendants, nor do the respective sets of claims involve

---

[6] Judge Stamp's opinion in *Dent v. Chesapeake Appalachia, LLC*, No. 5:12CV53, 2013 WL 461255 (N.D. W. Va. Feb. 5, 2013), *see* Remand Br. at 8, is not to the contrary.  In *Dent*, the nondiverse agent was alleged to have engaged in tortious behavior independent of his employer's direction by lying to the plaintiffs concerning the resolution of their drilling complaint, along with having "individually committed trespass by driving vehcicles and/or heavy equipment onto the plaintiffs' property."  *Id.* at *3.

common questions of law or fact.  The Board Defendants are hence fraudulently misjoined with Distributor Defendants.  The Counties' allegations against Distributor Defendants relate to the latters' alleged noncompliance with statutory requirements to report suspicious orders.  *See, e.g.*, Compl. ¶¶ 764–66.  The allegations against the Board Defendants, however, are that they violated an entirely different set of statutes requiring them to act in their regulatory capacity on the voluminous information—"approximately 7,200 reports of 'suspicious' orders"—provided them directly by Distributor Defendants and others.  *See, e.g., id.* ¶¶ 784, 787-89.

The Counties do not plausibly allege any connection between the alleged wrongful conduct of the Board Defendants and that of Distributor Defendants.  They allege just the opposite: the Board Defendants acted wrongfully by not following through on the lawful reports submitted by Distributor Defendants.  Indeed, to the extent that Distributor Defendants are alleged to have violated the law by ***not*** reporting every single suspicious order, the Board Defendants had ***no*** information that they could wrongfully ignore.  Moreover, to the extent that the Board Defendants would have taken any action based on reports that Distributor Defendants did submit, it would have been against pharmacies placing the orders, not Distributor Defendants.  The claims against the Board Defendants thus plainly arise out of a different set of legal duties owed by differently-situated persons without sufficient connection to the alleged wrongful acts of Distributor Defendants.  By necessity, no evidentiary overlap, let alone a "substantial" one, could exist between the two sets of claims that would permit joinder.  Again, that all the claims related to an "opioid epidemic" is not, under *Pittman*, sufficient for Rule 20 purposes.  *A fortiori*, the claims lack any common question of fact, and it is no different with respect to commonalities in the law.  Under *Hughes*, the Board Defendants' potential liability "has no bearing" on that of Distributor Defendants, and the converse is also true.  *See* 2009 WL 2877424, at *6.  The claims against the Board Defendants and Distributor Defendants thus are not susceptible to joinder under

Rule 20.

**B.      The Board Defendants are Fraudulently Joined.**

Notwithstanding their implausible and conclusory allegations of intentional, malicious

conduct, the Counties' claims against the Board Defendants boil down to an assertion that those

defendants negligently performed their duties.  Qualified immunity bars such claims when the

agency exercises its regulatory discretion, as the Board Defendants did in licensing and inspecting

wholesale drug distributors.  Similarly, the public duty doctrine bars claims by civil plaintiffs,

including counties and municipalities, seeking money damages or injunctions because a state

agency was lax or ineffective.  Also, because the Counties failed to sue the Board Defendants in

the Circuit Court of Kanawha County, as West Virginia law requires, they do not have a "glimmer

of hope" of succeeding on their claims.  *See Hartley v. CSX  Transp., Inc.*, 187 F.3d 422, 426 (4th

Cir. 1999).  Accordingly, the Counties have fraudulently joined the Board Defendants.

### 1.      The Board Defendants are entitled to qualified immunity.

Under West Virginia law, the Board Defendants have qualified immunity from precisely

the kind of claims the Counties allege.  *See W. Va. Bd. of Educ. v. Marple*, 783 S.E.2d 75, 81 (W.

Va. 2015) ("[Qualified immunity] preserves the freedom of the State, its agencies, and its

employees to deliberate, act, and carry out their legal responsibilities within the limits of the law

and constitution."); *W. Va. Reg. Jail & Corr. Facility Auth. v. A.B.*, 766 S.E.2d 751, 766 (W. Va.

2014); *Clark v. Dunn*, 465 S.E.2d 374, 380–81 (W. Va. 1995) (concluding "the doctrine of

qualified or official immunity bars a claim of mere negligence against the Department of Natural

Resources, a state agency").[7]

---

[7] Further, W. Va. Code §30-5-5(o) provides that "[t]he members of [the Board] when acting in good
faith and without malice shall enjoy immunity from individual civil liability while acting within the
scope of their duties as board members."

The Counties cannot prevail against the Board Defendants for negligence, but only for violations of "clearly established statutory or constitutional rights or laws."  *See A.B.* at 766.  No "clearly established" rights (as opposed to clearly established "statutes") are alleged.  The Complaint asserts claims with respect to acts or omissions in the scope of the Board Defendants' duties as a state agency and employees.  *See* Compl. ¶¶ 776–794.  In short, the Complaint asserts that the Board Defendants should have done a better job as regulators.  Though the Counties have made cursory allegations against the Board Defendants of "malicious" conduct, their allegations of malice are unsupported by any facts or reasonable inferences derived therefrom.  It is simply not plausible, upon any fair reading of the Complaint, to conclude that the Board Defendants acted in bad faith and with malice to cause the injuries complained of by the Counties.

The Counties' claims against the Board Defendants are plainly barred by qualified immunity, as they are based on alleged acts or omissions that involve judicial, legislative, executive, and/or administrative policy making, namely, *inter alia*, the allegedly negligent licensing of distributors, pharmacies and manufacturers, *see* Compl. ¶¶ 787–789, and the allegedly negligent failure to investigate "suspicious order" reports, *id.* ¶¶ 783–785, 790.  Even if any of the Counties' claims could be characterized as challenging anything other than the BOP's policymaking functions, the Board Defendants still would be immune from the claims because the claims are all based on conduct within its discretion, rather than on any statutory or regulatory directive that requires it to perform a ministerial act that is "so well prescribed, certain, and imperative that nothing is left to the public official's discretion."  *W. Va. Dep't of Health & Human Res. v. Payne,* 746 S.E.2d 554, 565 n.26 (W. Va. 2013).

Plaintiffs cannot overcome qualified immunity by alleging that the BOP failed to properly evaluate Distributor Defendants' overall security systems or failed otherwise to

16

properly inspect Distributor Defendants.8  The BOP's licensing and inspection duties do not require the BOP "to micro-manage the daily functions of the facilities within their regulatory enforcement power to ensure constant, unwavering compliance in all aspects of their affairs." *Payne*, 746 S.E.2d at 565.  "[Q]ualified immunity insulates the State and its agencies from liability based on vague or principled notions of government regulation." *Id.*; *see also id.* at 567-68 (qualified immunity protects agency from claim of negligent licensing).

As recently as May 2017, the Supreme Court of Appeals of West Virginia concluded that a state agency was entitled to qualified immunity for its exercise of discretion in determining how to maintain a safe workplace (by keeping a malfunctioning freezer in good repair) in the absence of  plaintiff pleading "any legal, statutory, or regulatory requirements as to the scope, nature, timing,   or frequency of freezer inspection and maintenance." *W. Va. Bd. of Educ. v. Croaff*, No. 16-0532, 2017 WL 2172009, at *6 (W. Va. May 17, 2017).  The agency was *required* to maintain a safe workplace, but that did not nullify qualified immunity.  Instead, because the plaintiff did not plead any law governing *how* the agency was to perform its inspections, the plaintiff did not identify "any clearly established statutory or constitutional right or law violated by the acts or omissions of the [agency], its officials, or employees." *Id.*  The Counties' Complaint here suffers from the same pleading defects.

## 2. The public duty doctrine separately applies to preclude the Counties' claims against the Board Defendants.

"The public duty doctrine, simply stated, is that a governmental entity is not liable because of its failure to enforce regulatory or penal statutes."  Syl. pt. 1, *Benson v. Kutsch*, 380

---

8 Moreover, the BOP's security regulations in W. Va. Code R. § 15-2-4 are promulgated pursuant to its statutory authority to license wholesale drug distributors and its ability to promulgate licensing regulations. *See* W. Va. Code § 60A-8-7.  Nothing in the statutory scheme or its implementing regulations imposes any duty on the BOP to counties or municipalities specifically.

S.E.2d 36 (W. Va. 1989).  A claim against a governmental entity "may not be predicated upon the breach of a general duty owed to the public as a whole; instead, only the breach of a duty owed to the particular person injured is actionable."  *Randall v. Fairmont City Police Dep't*, 412 S.E.2d 737, 747 (W. Va. 1991) (citation omitted).  The Counties do not and cannot allege any duty that the Board Defendants owe specifically to them that is distinct from the duty owed to the general public.  Absent such a duty owed to them, the Counties cannot maintain their negligence claims against the Board Defendants, or their derivative public nuisance claims.

The public duty doctrine protects the Board Defendants from claims that they breached a non-discretionary duty owed to the public at large.  *See W. Va. State Police v. Hughes*, 796 S.E.2d 193, 199 (W. Va. 2017).  The public duty doctrine confirms that the Board Defendants cannot be held liable for allegedly breaching "their duties to protect Plaintiffs."  Compl. ¶¶ 777, 787.  The regulatory enforcement scheme that the Counties assert the Board Defendants violated does not create any duties owed to specific individuals or political subdivisions.

### 3.    The Board Defendants cannot be forced to answer in Marshall County.

The Counties also cannot prevail on their claims against the Board Defendants because Marshall County is not a proper venue.  Claims against a state agency may be brought only in the circuit court of Kanawha County.  *See* W. Va. Code §14-2-2 ("Any suit in which . . . a state agency is made a party defendant, except as garnishee or suggestee [ ] shall be brought and prosecuted ***only*** in the circuit court of ***Kanawha County***."  (emphases added)).

Notwithstanding that the Supreme Court of Appeals of West Virginia has held that the mandatory venue statute does not apply "[w]here a cause of action is, in essence, a suit against a state agency's insurance carrier," *Pittsburgh Elevator Co. v. W. Va. Bd. of Regents*, 310 S.E.2d 675, 689 (W. Va. 1983), the referenced exception does not apply here.  Although the Counties' claim for damages against the Board is limited to its available insurance coverage, they have

also alleged that all defendants—including the Board—have contributed to an ongoing public nuisance.  Because the Counties seek abatement of the nuisance, *see* Compl. ¶ 820, they necessarily are pursuing direct injunctive relief against the Board.  The Counties' multifaceted action is therefore not merely a suit against the Board's insurance carrier for money, but a suit that seeks mandatory, coercive injunctions directing the Board to act in a particular way with respect to its official duties and responsibilities as a State agency.  The suit thus falls squarely within the mandatory venue provision of § 14-2-2, and it may be maintained, if at all, only in Kanawha County.  The Counties' attempted bypass of the mandatory venue provision highlights that the Board is fraudulently joined in this action.

The Counties' assertion that "[v]enue is not a jurisdictional question," Remand Br. at 15 (quoting *Hansbarger v. Cook*, 351 S.E.2d 65, 70-71 (W. Va. 1986)), is inapposite.  *Hansbarger* does not stand for the proposition that venue outside Kanawha County is proper when a plaintiff attempts to sue in the plaintiff's home county.  *Hansbarger* decided the unique question of whether a state official, who brought suit as a plaintiff outside Kanawha County, waived the protections of § 14-2-2 for a counterclaim when the state official had chosen the venue.  *See id.* at 70-71.  The issue of waiver—and thus the issue of whether § 14-2-2 is truly jurisdictional— arose in *Hansbarger* only because the state official initiated the suit.  Twenty-eight years later, the Supreme Court of Appeals decided *State ex rel. West Virginia Real Estate Appraiser Licensing and Certification Board v. Chiles*, 763 S.E.2d 663 (W. Va. 2014), distinguishing *Hansbarger* and rejecting the notion that a plaintiff can initiate a suit against a state agency anywhere other than in Kanawha County.  Accordingly, the Counties having sued the Board Defendants outside of Kanawha County is an incurable defect, independently establishing that they have no glimmer of hope of pursuing their claims in their chosen state court fora.

## IV.    GOODWIN DRUG IS FRAUDLENTLY JOINED.

Finally, the Counties have fraudulently joined Goodwin Drug Company ("Goodwin"), a small, defunct medical distributor that was not licensed to distribute controlled substances, including prescription opioids, at all for more than two years before the commencement of this suit.  Goodwin, of Wheeling, West Virginia, reported having only four employees in its most recent annual report.[9]  Upon information and belief, it distributed a very small amount of opioids until 2015, when it ceased to hold a controlled substances registration with the Drug Enforcement Administration ("DEA") and stopped distributing them altogether. A search of the DEA controlled substances registration database confirms that Goodwin has not been licensed to distribute controlled substances since, at the latest, September 30, 2015.[10] Goodwin is a textbook example of a defendant joined purely to circumvent federal diversity jurisdiction.

(To the extent that these facts concerning Goodwin are disputed by Plaintiffs, Removing Defendants request limited jurisdictional discovery on the subjects of Goodwin's DEA registration/opioid distribution history and business status.)

The applicable limitations period on the Counties' tort claims is two years.  *See* W. Va. Code § 55-2-12(b) (1959).  The limitations period on their nuisance claims is only one year.  *See id.* § 55-2-12(c); *State ex rel. Smith v. Kermit Lumber & Pressure Treating Co.*, 488 S.E.2d 901, 922 (W. Va. 1997).  The Counties' claims against Goodwin are therefore time-barred, and Goodwin should be dismissed as fraudulently joined.  *See Shaffer v. Nw. Mut. Life Ins. Co.*, 394 F. Supp. 2d 814, 818 (N.D. W. Va. 2005) ("[I]f a statute of limitations has run on a casue of action against a non-diverse defendant, the doctrine of fraudulent joinder may apply." (citation

---

[9] *See* Goodwin Drug Co., Annual Report 1 (June 13, 2017) (attached as Ex. 1).

[10] *See* DEA Controlled Substances Search Results (attached as Ex. 2).

omitted)).

The Counties retort that the limitations period has not begun to run on their public nuisance claims because the alleged nuisance has not abated, that Goodwin in particular has committed a continuing tort, and that the discovery rule operates to toll the time for suit. The Counties are incorrect. *First*, the nuisance allegedly caused by Goodwin was Goodwin's distribution of opioids into the Plaintiff counties, but any nuisance that Goodwin caused was permanently abated when it stopped distributing opioids, no later than September 2015. *Second*, the allegations of the Complaint itself illustrate why the continuing tort doctrine does not bring Goodwin within the limitations period. The Counties assert that "[t]he tort is not completed nor have all the damages been incurred until the wrongdoing ceases." Compl. ¶ 54. Goodwin's distribution of opioids—the source of its alleged wrongdoing—ceased no later than September 2015. The statute of limitations therefore ran on the Counties' tort claims against Goodwin well before they filed these actions.

*Third*, the Counties assert that they could not have known, through reasonable diligence, of Goodwin's allegedly tortious conduct until sometime within the limitations period. *See* Remand Br. at 6. The Counties do not say precisely when they did know, or should have known, about Goodwin's torts, or what finally triggered their knowledge. But it certainly was no later than June 2012 when the State of West Virginia sued opioid distributors alleging the exact same conduct that is the subject of this action that Plaintiffs filed in December 2017—more than five years later. The State's complaint was a matter of public record; the State's Attorney General announced it in a press conference, and it was the talk of state and national news.[11] There can be

---

[11]   Jon Kamp, *Corporate news: State sues drug distributors*, WALL STREET JOURNAL (June 28, 2012) (attached as Ex. 3); *AG Takes On Pill Mills*, WEST VIRGINIA METRONEWS (June 27, 2012), *available at* http://wvmetronews.com/2012/06/27/ag-takes-on-pill-mills) (attached as

no doubt that the Counties were on notice of their alleged claims against opioid distributors by then, and under a duty to exercise reasonable diligence to discover who was distributing opioids in their counties, particularly because they attribute the opioid epidemic in large part to those distributors.

## V.   THIS COURT MAY IN ANY EVENT EXERCISE ITS DISCRETION UNDER RULE 21 TO SEVER THE CLAIMS AGAINST THE NON-DIVERSE DEFENDANTS.

Even if this Court determines that one or more of the non-diverse defendants satisfies the conditions for permissive joinder in accordance with Rule 20, it should nonetheless exercise its discretion pursuant to Federal Rule of Civil Procedure 21 to sever the Counties' claims against that defendant or defendants.  *See McGee v. Cook*, No. 8:09-cv-2543, *et al.*, 2011 WL 12143135, at *1 (M.D. Fla. July 28, 2011) (pursuant to Rule 21, court severed plaintiffs' claims against "seven categories of Defendants" to "promote case management and a more orderly litigation" where "[a]lthough some of the same claims were asserted against all 70 Defendants, the factual support for those claims was different for each particular category").  By retaining jurisdiction over the claims against the diverse defendants, the Court would justly preserve the right of those defendants to a federal forum and permit the claims to be transferred to the Opiate MDL in the Northern District of Ohio, subject to the approval of the United States Judicial Panel on Multidistrict Litigation.  Severance under Rule 21 would thus promote efficiency and preserve scarce judicial resources.

---

Ex. 4); Chris Dickerson, *McGraw files suit against 'pill mill' distributors*, West Virginia Record (June 26, 2012) (attached as Ex. 5).

## VI.   DISTRIBUTORS' NON-PARTY FAULT NOTICES DO NOT DEFEAT DIVERSITY JURISDICTION.

The Counties resist the removal of these cases for fraudulent misjoinder on the ground that Distributor Defendants filed notices of nonparty fault in prior litigation contending, variously, that "Manufacturer Defendants were to blame for the opioid crisis," Remand Br. at 11, that "the BOP was to blame in part for the opioid crisis," *id.* at 17, and "because prescribing practitioners wrote prescriptions for controlled substances . . . for other than a medically necessary purpose," *id.* at 19.

But joinder and fault are unrelated inquiries.  Joinder is a procedural inquiry concerned with judicial economy.  *See* 7 Charles Alan Wright, et al., *Federal Practice and Procedure* § 1652, at 395 (3d ed. 2001) ("[Rule 20] simply establishes a procedure under which the demands of several parties arising out of the same litigable event may be tried together. . . .  Rule 20 is merely a procedural device and does not alter the substantive rights of the parties.").  As Judge Faber noted, "[u]nder Federal Rule 20 and the corresponding West Virginia rule, the claims, to be propery joined, must (1) arise out of the same transaction or occurrence, and (2) present a question of law or fact common to all defendants."  *McDowell Cnty.*, 263 F. Supp. 3d at 646 (citation omitted).  This two-part test is neutral as to matters of fault.  That the Counties have alleged that two or more defendants are at fault does not mean that that those defendants are properly joined.  Or, said differently, so long as Rule 20's two-pronged procedural test is satisfied, the claims may proceed together irrespective of the parties' fault.  By way of illustration, illegal sellers of other controlled substances are at fault for the damages the Counties are claiming—jail bills, for example.  Clearly, however, joinder of illicit drug dealers would be improper here.

Notwithstanding the Counties' accusations of inherent unfairness and injustice, Distributor Defendants' approach in prior litigation carefully tracked the plain meaning of West Virginia's nonparty fault statute, which requires "the trier of fact" to consider "the fault of ***all persons*** who contributed to the alleged damages ***regardless of whether the person was or could have been named as a party to the suit***."  W. Va. Code § 55-7-13d(a)(1) (2016) (emphasis added).  The distinction between fault and joinder is readily apparent in *Hughes*.  At no point did this Court conclude that either the physician or the treadmill manufacturers were blameless.  Indeed, at every turn, it was acknowledged that either or both could be liable.  That both were potentially liable to the plaintiff, however, plainly did not mean that they were properly joined in the same lawsuit, and that reality was reflected in the *Hughes* ruling denying remand and severing the malpractice claims.[12]  Consequently, here, as in *Hughes*, "the defendant's right of removal should prevail over that of permitting a plaintiff's choice of forum."  2009 WL 2877424 at *5 (citation omitted).  The Court should therefore sever the Counties' claims against the Medical Defendants "so as to preserve [the Removing Defendants'] right to removal in the remaining action and to preserve the interests of judicial expediency and justice."  *Id.* at *7; *accord McDowell Cnty.* at 646.

---

[12] Similarly, the Counties are incorrect to cite the JPML's transfer order for the proposition that "[i]t has already been judicially determined that Plaintiffs' claims against Defendants in the present case are properly joined."  Remand Br. at 9.  Although a variety of federal actions were transferred to the single venue, remand motions remain pending in many of them.  Moreover, even after those remand issues are decided, it remains to be seen whether the remaining proper federal defendants are joined in the same action for trial or designated to be tried within their own discrete groups.  For example, distributors may be entitled to be tried separately from manufacturers.  Indeed, this lawsuit is the first in West Virginia in which distributors have been sued along with manufacturers, so nothing that Distributor Defendants have done in connection with the prior West Virginia actions that have been transferred to the Opiate MDL could judicially estop them from invoking all legitimate grounds in opposition to the Counties' remand motion.

## CONCLUSION

For the foregoing reasons, Removing Defendants respectfully request that the Court deny the Counties' motion to remand and retain federal jurisdiction over the diverse defendants.

Dated this the 7th day of February, 2018.

Respectfully submitted,

**CARDINAL HEALTH, INC.**

**By Counsel,**

/s/ Steven R. Ruby
Brian A. Glasser (WVSB #6597)
bglasser@baileyglasser.com
Steven R. Ruby (WVSB #10752)
sruby@baileyglasser.com
BAILEY & GLASSER, LLP
209 Capitol Street
Charleston, WV 25301
Telephone:  (304) 345-6555
Facsimile:  (304) 342-1110

*Counsel for Cardinal Health, Inc.*

**AMERISOURCEBERGEN DRUG CORPORATION**

**By Counsel,**

s/ A. L. Emch
A. L. Emch (WVSB #1125)
aemch@jacksonkelly.com
Adam J. Schwendeman (WVSB #11989)
aschwendeman@jacksonkelly.com
JACKSON KELLY PLLC
500 Lee Street, East, Suite 1600
P.O. Box 553
Charleston, WV 25322
Telephone: (304) 340-1000
Facsimile: (304) 340-1130

*Counsel for AmerisourceBergen Drug Corporation in actions*
*by Brooke,  Hancock, Lewis, Marshall, Tyler and Wetzel County Commissions*

s/ Harry G. Shaffer III
Harry G. Shaffer III (WVSB #3344)
hshaffer@shafferlaw.net
Todd A. Mount (WVSB #6939)
tmount@shafferlaw.net
SHAFFER & SHAFFER
P.O. Box 38
Madison, WV 25130
Telephone: (304) 369-0511
Facsimile: (304) 369-5411

*Counsel for AmerisourceBergen Drug Corporation in*
*Ohio County Commission action*


**McKESSON CORPORATION**

**By Counsel,**

/s/Russell D. Jessee
Russell D. Jessee (WVSB #10020)
russell.jessee@steptoe-johnson.com
STEPTOE & JOHNSON PLLC
Chase Tower, 17th Floor
P.O. Box 1588
Charleston, WV 25326
Telephone: (304) 353-8000
Facsimile:  (304) 353-8180

*Counsel to McKesson in actions by Brooke, Hancock, Ohio, Tyler, and Wetzel Counties*


/s/ Jeffrey M. Wakefield
Jeffrey M. Wakefield (WVSB #3894)
JWakefield@flahertylegal.com
FLAHERTY SENSABAUGH BONASSO PLLC
P. O. Box 3843
Charleston, WV 25338-3843
Telephone: (304) 345-0200
*Counsel to McKesson in actions by Lewis and Marshall Counties*

/s/Daniel C. Cooper
Daniel C. Cooper (WVSB# 5476)
Dan.Cooper@cooperlawwv.com
Jamison H. Cooper (WVSB# 8043)
jami.cooper@cooperlawwv.com
COOPER LAW OFFICES, PLLC
240 Main Street
Bridgeport, WV 26330
Telephone: (304) 842-0505
Facsimile:  (304) 842-0544

*Counsel to McKesson in action by Harrison County*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned counsel for Defendant Cardinal Health, Inc., hereby certifies that on

February 7, 2018, he caused the foregoing **Defendants Cardinal Health, Inc.,**

**AmerisourceBergen Drug Corporation and McKesson Corporation's Response in**

**Opposition to Plaintiffs' Motion to Remand**, to be electronically filed with the Clerk of the

United States District Court for the Southern District of West Virginia, using the Court's

CM/ECF system, which shall send notifications of such filing to all counsel of record.


 /s/ *Steven R. Ruby*
Steven R. Ruby