UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
(WHEELING DIVISION)

| | |
|---|---|
| BROOKE COUNTY COMMISSION, <br> HANCOCK COUNTY COMMISSION, <br> HARRISON COUNTY COMMISSION, <br> LEWIS COUNTY COMMISSION, <br> MARSHALL COUNTY COMMISSION, <br> OHIO COUNTY COMMISSION, <br> TYLER COUNTY COMMISSION, and <br> WETZEL COUNTY COMMISSION, | Civil Action No. 5:18-cv-9 <br> Civil Action No. 5:18-cv-10 <br> Civil Action No. 5:18-cv-11 <br> Civil Action No. 5:18-cv-12 <br> Civil Action No. 5:18-cv-13 <br> Civil Action No. 5:18-cv-14 <br> Civil Action No. 5:18-cv-15 <br> Civil Action No. 5:18-cv-16 |
| Plaintiffs, <br> vs. | |
| PURDUE PHARMA L.P.; PURDUE PHARMA INC.; THE PURDUE FREDERICK COMPANY, INC.; MARK RADCLIFFE; MARK ROSS; PATTY CARNES; TEVA PHARMACEUTICALS USA, INC.; CEPHALON, INC.; JANSSEN PHARMACEUTICALS, INC.; ORTHO-MCNEIL-JANSSEN PHARMACEUTICALS, INC. n/k/a Janssen Pharmaceuticals, Inc.; JANSSEN PHARMACEUTICA, INC. n/k/a Janssen Pharmaceuticals, Inc.; JOHNSON & JOHNSON; ENDO HEALTH SOLUTIONS INC.; ENDO PHARMACEUTICALS, INC.; ALLERGAN plc; ACTAVIS plc;  ACTAVIS, INC.; ACTAVIS LLC; ACTAVIS PHARMA, INC.; WATSON PHARMACEUTICALS, INC.; WATSON PHARMA, INC.; WATSON LABORATORIES, INC.; MCKESSON CORPORATION; CARDINAL HEALTH, INC.; AMERISOURCEBERGEN DRUG CORPORATION; RITE AID OF MARYLAND, INC.; KROGER LIMITED PARTNERSHIP II; CVS INDIANA, L.L.C.; WAL-MART STORES EAST, LP; GOODWIN DRUG COMPANY; WEST VIRGINIA BOARD OF PHARMACY; DAVID POTTERS; EDITA P. MILAN, M.D.; TRESSIE MONTENE DUFFY, M.D.; EUGENIO ALDEA MENEZ, M.D.; SCOTT JAMES FEATHERS, D.P.M.; and AMY LYNN BEAVER, P.A.-C, | Judge John Preston Bailey |
| Defendants. | |

## REPLY IN SUPPORT OF PLAINTIFFS' EMERGENCY MOTION TO REMAND

Addressing a Motion to Remand is an appropriate action for a court to take before a case is transferred to an MDL. *Gen. Elec. Co. v. Byrne*, 611 F.2d 670, 673 (7th Cir.1979). Because federal jurisdiction is limited, a district Court is first obligated to determine whether it has subject matter jurisdiction. *McCulloch v. Vélez*, 364 F.3d 1, 5 (1st Cir.2004). If this court does not have jurisdiction due to improper removal, then neither will the MDL. Thus, the instant motion is ripe for consideration, especially considering the MDL's position on remand motions.

### I. DEFENDANTS' OPPOSITION FAILS TO ESTABLISH THAT DEFENDANT GOODWIN HAS BEEN FRAUDULENTLY JOINED.

Defendants argue that Plaintiffs' public nuisance claims against Defendant Goodwin are time-barred because Defendant Goodwin stopped distributing opioids on or about September 2015.[1] (Opp., p. 21.) Even assuming this is true (which one cannot conclude solely from Def.'s Ex. 2), this argument must still fail. Well-established West Virginia law holds that the statute of limitations for public nuisance claims does not begin to run "until the harm or endangerment to the public health, safety, and the environment" has been abated — not when the conduct giving rise to the nuisance has stopped. Syl. Pt. 11, *State ex rel. Smith v. Kermit Lumber & Pressure Treating, Co.*, 488 S.E.2d 901, 905 (W.Va. 1997).

In *Kermit Lumber, supra*, the DEP filed suit against a lumber treatment company alleging a claim for temporary public nuisance nearly 7 years after the plant closed. *Id.*, 488 S.E.2d at

---

[1] In its Notice, Defendants also claimed that Defendant Goodwin was fraudulently joined because it is a "nominal party." (Notice, ¶ 49.) In their Motion and supporting Memorandum, Plaintiffs addressed why this argument was factually and legally incorrect. In their Response, Defendants fail to address this issue within the text of their argument. (Resp., p. 20-22,) Thus, it appears Defendants have abandoned this argument and conceded that Goodwin is not a "nominal party." *See Oliver v. Baity*, 208 F. Supp. 3d 681, 690 (M.D.N.C. 2016) ("Courts have recognized that a party's failure to address an issue in its opposition brief concedes the issue.")

1

906. In reversing the circuit court's order dismissing the claim on statute of limitations grounds, the West Virginia Supreme Court held:

> "A public nuisance action usually seeks to have some harm which affects the public health and safety abated. ***Thus, until such harm is abated, the public nuisance is continuing and the statute of limitations does not accrue*** ... It is inconceivable that the arsenic caused all the damage it could prior to 1988 when the appellees vacated the business site. Indeed, ***the DEP's complaint alleges that the harm from the arsenic continues to endanger the 'public health, safety and the environment,' and will continue to endanger the 'public health, safety and the environment' until the arsenic is removed***. Thus, based on the allegations in the DEP's complaint, the one-year statute of limitations found in W.Va. Code, 55–2–12(c) [1959] has not accrued and will not accrue until the arsenic levels at the Kermit Lumber site no longer endanger 'the public health, safety and the environment.'" *Id.* at 925 (internal cit. om.)

In *Kermit Lumber* the West Virginia Supreme Court also cited to and found "persuasive" the reasoning set forth in *Arcade Water District v. United States*, 940 F.2d 1265 (9th Cir. 1991). *Kermit Lumber*, 488 S.E.2d at 925. In *Arcade*, the plaintiff brought an action for public nuisance against the United States nearly 11 years after a military laundry closed alleging that the laundry contaminated its water supply. *Arcade*, 940 F.2d at 1266. The Ninth Circuit found that the plaintiff's claim was timely filed and reasoned that a continuing overt act by a defendant is not needed to establish a continuing nuisance:

> "[P]laintiff's land may be subject to a continuing nuisance ***even though defendant's offensive conduct ended years ago***. That is because the 'continuing nature of the nuisance ***refers to the continuing damage caused by the offensive condition, not to the acts causing the offensive condition to occur***.'" *Id.*, 940 F.2d at 1268 (internal citations omitted).

Here, just like the plaintiffs in *Kermit Lumber* and *Arcade*, *supra*, Plaintiffs allege that the harm to the public health, safety and welfare caused by the opioid epidemic continues and remains unabated. (*See* Compl., ¶¶ 2, 680 and 690). Thus, based upon clearly established principles of West Virginia law, Plaintiffs' claims for public nuisance are not time-barred.

2

Defendants' argument that the continuing tort doctrine does not apply is similarly flawed. Where a tort involves a continuing or repeated injury, and where the damages do not occur all at once but increase as time progresses, "the cause of action accrues at and the statute of limitations begins to run ***from the date of the last injury or*** when the tortious overt acts or omissions cease." *Graham v. Beverage,* 566 S.E.2d 603, 614 (W.Va. 2002) (em. add.). Accordingly, whether Defendant Goodwin has stopped distributing opioids is not dispositive because Plaintiffs' have sufficiently alleged that they have not incurred their last injury, and their damages have not occurred all at once but increased as time has progressed. (Compl., ¶ 680.) As such, each injury to Plaintiffs is a new wrong and the statute on Plaintiffs' claims begins to run from their last date of injury—which has not yet been incurred. *See Handley v. Town of Shinnston,* 289 S.E.2d 201, 202 (W.Va. 1982).

Defendants have further failed to carry their heavy burden of proving without a doubt that Plaintiffs' claims are not tolled by the discovery rule. In support of their argument, Defendants assert that "[t]he Counties do not say precisely when they did know, or should have known, about Goodwin's torts, or what finally triggered their knowledge." (Opp., p. 21.) This contention is misplaced. "A plaintiff is not required to assert facts in its complaint that would stave off all possible defenses. An assertion that a claim is time-barred is an affirmative defense that a defendant—not a plaintiff—must prove." *Burgess v. Infinity Fin. Employment Servs., LLC,* No. 2:11-CV-00946, 2012 WL 399178, at *5 (S.D.W. Va. Feb. 7, 2012). Plaintiffs have sufficiently alleged that the discovery rule applies to their claims, and Defendants have offered no credible evidence or argument to the contrary sufficient to meet their heavy burden.

Equally unavailing is Defendants' argument that the statute of limitations has run because the State of West Virginia filed a lawsuit against several of the Distributor Defendants in 2012.

3

*First*, Defendants present no evidence that Plaintiffs' were aware of this lawsuit or knew what it was about, and this is a question of fact not proper for a fraudulent joinder analysis. *Second*, Plaintiffs allege Defendants' tortious conduct continued beyond 2012. *Third*, Defendant Goodwin was not a party to that lawsuit and, therefore, its identity and torts could not have been known based upon the filing of the lawsuit. *Finally*, if Defendants' argument is true, removal on these grounds would be improper because the statute of limitations would be a "common defense" to all Distributor Defendants. Under the "common defense" rule, removal of a state claim is impermissible when the legal theory upon which the defendant's claim of fraudulent joinder is predicated is a common defense that equally disposes of other diverse defendants to the suit. *McDowell Pharmacy, Inc. v. W. Va. CVS Pharmacy, L.L.C.*, No. 1:11-CV-0606, 2012 WL 2192167, at *4 (S.D.W. Va. June 14, 2012) (holding that "common defense" claims cannot be considered in a fraudulent joinder analysis).

At a minimum, questions of fact exist about when Plaintiffs knew, or should have known, about Defendant Goodwin's identity and tortious conduct. And in cases where the statute of limitations requires a factual determination, or is difficult to determine, the doctrine of fraudulent joinder is not appropriate.[2] *Shaffer v. Nw. Mut. Life Ins. Co.*, 394 F.Supp.2d 814, 818 (S.D.W.Va.2005).

Significantly, the fraudulent joinder standard is even more favorable to Plaintiffs than the standard for ruling on a motion to dismiss and, as a result, particularly burdensome for Defendants. *Hartley v. CSX Transp., Inc.*, 187 F.3d 422, 425 (4th Cir.1999). Inasmuch as a

---

[2] "[F]raudulent joinder claims are subject to a rather black-and-white analysis in this circuit. Any shades of gray are resolved in favor of remand." *Morrison v. Standard Ins. Co.*, No. 2:10–CV–0156. 2010 WL 3703036 *4 (S.D.W.Va. Sept. 16, 2010) (rejecting fraudulent joinder claim because defendant failed to prove "without a doubt" that plaintiff's claims were barred by the statute of limitations).

4

statute of limitations challenge at the motion to dismiss stage is successful only in "relatively rare circumstances," *Goodman v. Praxair, Inc.,* 494 F.3d 458, 464 (4th Cir.2007), it follows that a defendant asserting a fraudulent joinder claim predicated on a statute of limitations defense faces a "nearly insurmountable challenge." *Morrison,* 2010 WL 3703036, at *7. Simply stated, Defendants have failed to meet that challenge here.

## II. DEFENDANTS' OPPOSITION FAILS TO ESTABLISH THAT THE PURDUE SALES REPRESENTATIVE DEFENDANTS ARE FRAUDULENTLY JOINED OR MISJOINED.

Defendants' contention that Plaintiffs have not asserted viable claims against the Purdue Sales Representative Defendants because they were alleged to have been acting within the course and scope of their employment is wrong and ignores clear law. The West Virginia Supreme Court has held numerous times:

> "An agent or employee can be held personally liable for his own torts against third parties and this personal liability is independent of his agency or employee relationship. Of course, *if he is acting within the scope of his employment*, then his principal or employer may *also* be held liable." *See*, e.g., Syl. Pt. 5, *Travis v. Alcon Labs., Inc.,* 504 S.E.2d 419, 421 (W.Va. 1998) (em. added). [3]

Plaintiffs' Complaint also raises numerous individual allegations against the Purdue Sales Representative Defendants concerning their specific conduct and asserts individual claims against these Defendants in their individual capacity, thus rending them personally liable to Plaintiffs. (Compl., ¶¶ 725 – 744.) For example, Plaintiffs allege that Defendant Radcliffe – Purdue's former W.Va. District Manager– trained his sales representatives to be "Audible Ready" when questioned about street-abuse and to misrepresent OxyContin's addictiveness and likelihood of abuse, diversion, and misuse. (Compl., ¶ 739.) The Purdue Sales Representative

---

[3] *See also, Jarvis v. Modern Woodmen of America,* 406 S.E.2d 736 (W.Va. 1991).

Defendants are not immune from their tortious conduct simply because they were acting within the scope of their employment or agency. "Agency law does not insulate an agent from liability for [his torts because it is premised] upon the common-law obligation that every person must so act or use that which [he] controls as not to injure another." *Dent v. Chesapeake Appalachia, LLC*, No. 5:12CV53, 2013 WL 461255, at *5 (N.D.W. Va. Feb. 5, 2013). Further, "[a]n agent is not relieved from liability merely because he or she acted at the request, command, or directions of the principal." *Id.*

Defendants' attempts to distinguish *Travis* and *Dent* are not persuasive. While *Travis* may have involved claims regarding intentional conduct, *Travis* in no way stands for the proposition that agents cannot be held liable for tortious acts committed within the scope of their agency. To the contrary, *Travis* expressly stated otherwise: "Individual agents or employees may also be held individually responsible for their acts done within the course and scope of their employment." *Id.*, 504 S.E.2d at 431.

Moreover, Defendant's assertion that *Dent, supra*, did not involve allegations of tortious conduct committed within the scope of the individual defendant's agency misstates the facts and findings in that case. In *Dent*, Judge Stamp specifically held:

> **Like in the plaintiffs' complaint here,** the individual defendant in [*Jarvis, supra,*] **was alleged to have engaged in the conduct in the course of his employment** ..., but because the conduct alleged was his own, rather than simply general behavior of the defendants in the course of denying benefits, the Court allowed the case to continue against that defendant. The Court stated, **"[a]n agent or employee can be held personally liable for his own torts ... and this personal liability is independent of his agency or employee relationship.** If he is acting within the scope of employment, then his principle or employer may also be held liable." For the same reasons, **this Court finds that a possible individual claim has been alleged against defendant Dobkin, and he is not protected from liability by *respondeat superior*.** Accordingly, defendant Dobkin has not been fraudulently joined to this civil action. *Id.*, 2013 WL 461255, at *6 (emphasis added) (internal citations omitted).

6

The Purdue Sales Representative Defendants are also properly joined under Rule 20's liberal joinder requirements. Defendants' argument that Plaintiffs' claims involve different legal duties misses the point. Absolute identity of issues and events is not required under Rule 20 and joinder is permissible for all reasonably related claims. *Saval v. BL Ltd.*, 710 F.2d 1027, 1031 (4th Cir.1983). Regarding the first prong of Rule 20, all "logically related" events entitling a person to institute a legal action against another generally are regarded as comprising a transaction or occurrence. *J.C. ex rel. Cook v. Pfizer, Inc.*, No. 3:12-CV-04103, 2012 WL 4442518, at *5 (S.D.W. Va. Sept. 25, 2012).

The instant claims are logically related and arise out of the same series of transactions or occurrences. As the JPML found, claims against distributor and manufacturer defendants were proper for consolidation because they involved the "improper marketing and widespread diversion of prescription opiates into states, counties and cities across the nation ..." *In re Nat'l Prescription Opiate Litig.*, No. MDL 2804, 2017 WL 6031547, at *2 (U.S. Jud. Pan. Mult. Lit. Dec. 5, 2017).[4] The improper marketing and resulting widespread diversion, abuse and addiction of opioids are a logically related series of transactions involving both sets of Defendants as the conduct of each Defendant, at various stages in the marketing, sale and distribution of the opioid drugs, caused the ultimate diversion, abuse, addiction and damages in Plaintiffs' counties. Further, these Defendants each had the ability and responsibility to stop the diversion of the drugs at various points along the road of sale and distribution. Plaintiffs' claims against these defendants also involve the same occurrence—the opioid epidemic and Plaintiffs' resulting

---

[4] The Purdue Sales Representative Defendants are not individually named defendants in any of the claims currently pending in the MDL. However, because these Defendants were sales representatives and district managers for Purdue, their conduct overlaps and is related to the conduct of Purdue - a manufacturer defendant in the MDL.

7

damages. While the duty owed by each Defendant may differ, these differences are not dispositive because proper joinder under Rule 20 only requires a logical relationship between the claims - which is present here.

Common questions of fact and law also abound in Plaintiffs' claims as has been previously determined by the JPML. *See In re Nat'l Prescription Opiate Litig.*, 2017 WL 6031547, at *2 ("[W]e find that the actions in this litigation involve common questions of fact ...").[5] Like the cases in the MDL, this case involves common legal, factual, and evidentiary issues, including: Defendants' knowledge of and conduct regarding the diversion, abuse and addiction of prescription opioids; the amount of opioid drugs marketed, sold and distributed in the Counties; the relationship between the legitimate needs of the Counties and the quantities of opioids marketed, sold and distributed in the Counties; the relationship between the dramatic increase in the number of opioids distributed in the Counties and diversion, abuse and addiction; the role that security measures play in the prevention of diversion, abuse and addiction; and the damages incurred by each of the Counties. Additionally, Distributor Defendants are authorized distributors for Purdue and are an essential part of Purdue's distribution chain. Thus, records and communications between Distributor Defendants and Purdue, including the Sales Representative Defendants, are relevant and material evidence, particularly to the extent they concern the massive increase in the amount of opioids marketed and flowing into the Counties; what efforts

---

[5] Notably, the Removing Defendants' arguments to this Court are inconsistent with their previous representations to the JPML wherein they stated that there were common factual and legal for claims involving both manufacturer and distributor defendants. *In re Nat'l Prescription Opiate Litig.*, No. MDL 2804, at ECF 148, p. 3 n.6 ("While many similar legal and factual issues are presented by these cases ...) and p. 11 ("Distributor Defendants support centralization, given the factual and legal issues common to what is quickly becoming nationwide litigation.")

8

were taken to prevent diversion of controlled substances; and knowledge of diversion, abuse and addiction within the Counties.

Moreover, notwithstanding Defendants' attempt to downplay its significance, Defendants' Notice of Fault is highly relevant to whether these claims are properly joined. Because Defendants have blamed the Manufacturer Defendants—and by extension their sales representatives—resolution of this case will require answering inextricably linked questions of fact arising out of a singular series of transactions, i.e. the marketing, sale, promotion, distribution and/or diversion of opioids within the Plaintiffs' counties.[6] Thus, Defendants' Notice of Fault supports the conclusion that these claims arise of the same series of transactions or occurrences and should be litigated in a single action.

### III. DEFENDANTS' OPPOSITION FAILS TO ESTABLISH THAT THE BOARD DEFENDANTS ARE FRAUDULENTLY JOINED OR MISJOINED.

#### A. Plaintiffs Have Asserted a Legally Viable Claim Against Defendant Potters and Defendants' Opposition Fails to Contend Otherwise.

W.Va. Code § 30-5-5 authorizes a claim against Defendant Potters if he did not act in good faith or with malice. In their Complaint, Plaintiffs allege that Defendant Potters breached his duty to Plaintiffs and that his conduct in doing so was not in good faith and carried out with actual malice. (Compl., ¶¶ 780-785, 789-791.) Defendants' failure to even address Plaintiffs' claim against Defendant Potters in their Opposition is telling and conclusively evidences that he is not fraudulently joined.

---

[6] Removing Defendants also blamed the Board Defendants and various prescribers in their Notice of Fault, thus this argument is equally applicable to all claims alleging misjoinder.

### B. Plaintiffs' Claims Against the Board Defendants are Not Barred by Qualified Immunity.

Defendants' Opposition does not and cannot dispute established West Virginia law whereby the Board Defendants are not entitled to qualified immunity if Plaintiffs allege the Board's actions violated clearly established laws which a reasonable person would have known. *Brown v. City of Montgomery*, 755 S.E.2d 653 (W.Va. 2014). Similarly, Defendants cannot dispute that the alleged violation of West Virginia statutes or regulations is sufficient to defeat qualified immunity. *W. Virginia Reg'l Jail & Corr. Facility Auth. v. A.B.*, 766 S.E.2d 751 (W.Va. 2014); *See also, Brown*, 755 S.E.2d 653 (W.Va. 2014).

Here, Plaintiffs allege the Board Defendants violated several ***clearly established statutes and regulations*** which contain ***specific mandatory requirements*** related to security in connection with the distribution and sale of opioid drugs in West Virginia. Plaintiffs, *inter alia*, allege violations of the requirement that the Board Defendants evaluate the Distributor Defendants' security system which must be designed and operated to disclose suspicious orders of controlled substances because of their unusual size, deviation from normal pattern or unusual frequency. (W.Va. CSR 15-2-4; Compl., ¶¶ 787-790.) Plaintiffs further allege that the Board Defendants violated the W.Va. Pharmacy Practice Act, W.Va. Code § 30-5-1, *et seq.*; W.Va. Code §§ 30-5-6(d) and (f), 30-5-6(l) and (o), 60A-3-303 and (a); and W.Va. CSR §§ 15-2-3, 15-2-3.1, 15-2-3.11, 15-2-4. *Id.* These are precisely the type of clearly established laws which the West Virginia Supreme Court has held public officials should be aware, and a violation of which results in the loss of qualified immunity. *WVRJCFA v. A.B. Va.,* 766 S.E.2d at 774 (noting plaintiffs claim failed because plaintiff did not cite a single violation of existing state regulations governing aspects of training, supervision and retention in jails). Accordingly, Plaintiffs' claims

10

against the Board Defendants are not based upon a breach of the Board Defendants general judicial, legislative, or executive functions, but rather violations of the aforementioned regulations which impose specific duties upon the Board Defendants.

Defendants' citied authorities are not persuasive and support remand. *W.Va. Dep't of Health & Human Res. v. Payne*, 746 S.E.2d 554 (W.Va. 2013) is inapposite. In *Payne* (a claim brought by a plaintiff who choked on a hot dog while in custody at a rehabilitation center), the West Virginia Supreme Court upheld dismissal because the plaintiff failed to identify and establish that a specific law, statute, or regulation was violated. *Payne*, 746 S.E.2d at 565. Such is not the case here as Plaintiffs have sufficiently alleged that specific statutes and regulations were violated. Additionally, *Payne* concerned a motion for summary judgment and was based upon a fully developed evidentiary record. Unlike the standard for summary judgment, Plaintiffs here need only demonstrate a "glimmer of hope." And because questions of qualified immunity are highly fact intensive, and all factual allegations and contested issues of law must be construed in the light most favorable to Plaintiffs, a case involving summary judgment is not appropriate for a fraudulent joinder analysis. *See* Syl. Pt 9, *Parkulo v. West Virginia Bd. Of Probation*, 483 S.E.2d 507 (W.Va. 1996) (questions of qualified immunity are fact intensive).

*W. Va. Bd. of Edu. v. Croaff*, No. 16-0532, 2017 WL 2172009 (W. Va. 2017) (unpublished memorandum opinion), is likewise distinguishable. In *Croaff*, the plaintiff "did not plead, and ha[d] not identified, any legal, statutory or regulatory requirements" applicable to the BOE, and the plaintiff failed to "identif[y] a specific law, statute, or regulation violated by the [BOE]." *Id*. Here, unlike the plaintiff in *Croaff*, Plaintiffs have alleged that the Board Defendants violated several specific West Virginia statutes and regulations. (*See* Compl., ¶¶ 787-790.)

11

### C. Plaintiffs' Claims Against the Board Defendants are Not Barred by the Public Duty Doctrine as the Board Defendants' Conduct Was Willful, Wanton, and Reckless.

Defendants' Opposition fails to address—and therefore concedes—Plaintiffs' assertion that the public duty doctrine does not apply to claims of willful, wanton, or reckless behavior. *See Holsten v. Massey*, 200 W. Va. 775, 786, 490 S.E.2d 864, 875 (1997). Because Plaintiffs have pled that the Board Defendants' conduct was willful, wanton, and reckless, and all legal uncertainties and issues of law and fact must be resolved in Plaintiffs' favor, Defendants have failed to prove without a doubt that the "public duty doctrine" bars the instant claims.

### D. The Board Defendants are Not Fraudulently Misjoined.

Plaintiffs' claims against the Board Defendants and the Distributor Defendants involve the same series of transactions and occurrences—the distribution of alarming quantities of opioid drugs in the Counties over a period of years which the Distributor and Board Defendants were required to monitor, report and prevent. There is a strong nexus and connection between the conduct of these Defendants. Both had duties in relation to the security system and were supposed to monitor, identify and prevent the same influx of massive quantities of opioids into the Counties which caused the indivisible injury and damages to Plaintiffs.

There is also an almost complete evidentiary overlap between these claims, including: the amount of opioid drugs distributed in the Counties and the relationship between those amounts and diversion, abuse, addiction and the legitimate needs of the Counties; the alarming increase in the amount of opioid drugs distributed in the Counties and the role security measures, including suspicious order reporting and related investigations, play in preventing diversion, abuse and addiction; Defendants' duties and roles in connection with the security system which is supposed to be designed and operated to monitor, identify, report and investigate suspicious orders; the

causal connection between the failure to monitor, identify, report and investigate suspicious orders and the diversion, abuse, addiction in the Counties; and the damages suffered by Plaintiffs. In fact, the only evidence which arguably does not overlap relates to those laws which create each Defendant's respective duties in relation to the security system established to prevent the diversion, abuse and addiction that occurred in the Counties. However, as previously discussed, complete identify of issues is not required for claims to be properly joined, there only needs to be a logical relationship. *Mosley v. Gen. Motors Corp.*, 497 F.2d 1330 (8th Cir.1974)).

### E. Marshall County Is A Proper Venue For Plaintiff's Claims Against the BOP.

Defendants' attempt to have this Court rewrite and distort Plaintiffs' Complaint is improper. Plaintiffs' have not pled and are not seeking injunctive relief against the Board. The words "injunction" or "injunctive relief" – or any other words to that effect – do not appear in Plaintiffs' Complaint. And Paragraph 54 of the Complaint makes clear that Plaintiffs' claims against the Board are only seek recovery against its liability insurer. The fact that Plaintiffs are seeking abatement of the public nuisance does not magically transform Plaintiffs' compensatory damage claims into claims for injunctive relief. Recovery of compensatory damages by a governmental entity is permitted when the acts of a private party create a public nuisance which the government seeks to abate. *See Cincinnati v. Beretta U.S.A. Corp.*, 768 N.E.2d 1136, 1150 (Ohio 2002) (finding that city plaintiff could recover economic damages for its public nuisance claim seeking to abate public nuisance). Thus, *Pittsburgh Elevator*, is dispositive of this issue.[7]

---

[7] Additionally, for the reasons set forth in Plaintiffs' Memorandum of Law in Support of Their Motion to Remand, W.Va. Code § 14-2-2 does not require venue in Kanawha County as a claim for injunctive relief does not fall into any of the enumerated categories set forth in § 14-2-2.

13

Nonetheless, assuming *arguendo* that venue in Marshall County is improper, Defendants still cannot establish that the Board Defendants were fraudulently joined.[8] Plaintiffs have demonstrated more than a "glimmer of hope" on their claims against the Board Defendants, because improper venue of Plaintiffs' should result in transfer, not dismissal. *See, Motto v. CSX Transp., Inc.*, 647 S.E.2d 848, 851 n.4 (W. Va. 2007). Additionally, the doctrine of "fraudulent joinder" applies only to claims where the plaintiff has tactically named a non-diverse defendant in order to defeat diversity jurisdiction. *Mayes v. Rapoport*, 198 F.3d 457, 461 (4th Cir.1999). Thus, if Plaintiffs improperly pled venue in Marshall County, such does not constitute a "fraudulent joinder" because whether venue is proper in Marshall County or Kanawha County, the Board Defendants are still West Virginia residents, which destroys diversity. *See Austin v. Ameriquest Mortg. Co.*, 510 F. Supp. 2d 1218, 1224 (N.D. Ga. 2007).

## IV. THE MEDICAL DEFENDANTS ARE NOT FRAUDULENTLY MISJOINED.

Defendants' reliance on *County Commission of McDowell County v. McKesson Corporation*, 263 F. Supp. 3d 639 (S.D. W.Va. 2017) is misplaced. *McDowell County* is not binding on this Court.[9] Further, its reasoning is inconsistent with the concepts of misjoinder as applied in this District. In *Hughes v. Sears, Roebcuk & Co.*, No. 2:09-CV-93, 2009 WL 2877424, at *6 (N.D. W.Va. Sept. 2, 2009), this Court found that Plaintiffs' claims were misjoined because there was "no bridge" between the claims against the doctor and treadmill manufacturer. Here, in contrast to the claims in *Hughes*, there is a "bridge" and a sufficient nexus.

---

[8] Notably, the West Virginia House of Delegates recently passed House Bill 2028 by a 96-0 vote which would amend W.Va. Code § 14-2-2 to allow claims against the state to be filed in any county wherein the cause of action arose. (*See* Exhibit 1.) HB2028 is currently pending in the Senate, and if it becomes law, the venue issue would be mooted.

[9] If the Court finds that any of the other non-diverse Defendants are properly and non-fraudulently joined, the Court would not need to address, and could leave undisturbed, Judge Faber's decision in *McDowell County* because a finding regarding any one of the other non-diverse defendants mandates remand.

Plaintiffs' claims against the Distributor Defendants and the Medical Defendants all relate to their role in the widespread distribution, sale, and diversion of opioids within the Plaintiffs' communities which caused the opioid epidemic in the Plaintiffs' counties. The Distributor Defendants effectuated delivery of the opioid drugs to the Counties through distribution to various pharmacies and health care facilities, and physicians, including the Medical Defendants, wrote prescriptions resulting in the purchase of these drugs. Plaintiffs claim that the Medical Defendants improperly prescribed the opioid drugs and the Distributor Defendants failed to monitor, identify and report irregularities in opioid distribution patterns for these drugs.[10] Thus, these claims are logically related, arise from the same series of transactions, and involve common questions of fact and law. These claims also involve the same occurrence, i.e. the opioid epidemic arising from the marketing, distribution, diversion, abuse and addiction of opioid drugs in the Plaintiffs' counties, and an indivisible injury sustained by Plaintiffs. *Bell v. Werner Enterprises, Inc.*, No. 5:11CV18, 2011 WL 1297115, at *3 (N.D.W. Va. Apr. 5, 2011).

## CONCLUSION

Consistent with the grounds stated in their Notice of Removal, Defendants' Opposition Memorandum fails to satisfy their heavy burden of proving federal jurisdiction by clear and convincing evidence especially after construing all factual allegations and contested issues of law in Plaintiffs' favor. Accordingly, the Court should remand this case to Marshall County, West Virginia because subject matter jurisdiction is lacking.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

---

[10] Plaintiffs' claims against the Medical Defendants are not claims for medical malpractice as they relate to improper prescriptions – not legitimate health care services. (Plaintiffs' medical malpractice claims were pled in the alternative as a precautionary measure in anticipation of Defendants' shotgun approach to removal and dismissal.) Accordingly, Defendants overly narrow characterization of the "transaction" concerning Plaintiffs' claims against the Medical Defendants as the "patient encounters" is erroneous.

Respectfully Submitted,

**BROOKE COUNTY COMMISSION, HANCOCK COUNTY COMMISSION, HARRISON COUNTY COMMISSION, LEWIS COUNTY COMMISSION, MARSHALL COUNTY COMMISSION, OHIO COUNTY COMMISSION, TYLER COUNTY COMMISSION,** and **WETZEL COUNTY COMMISSION,** *Plaintiffs*

By: /s/ *Clayton J. Fitzsimmons*
Robert P. Fitzsimmons (WV Bar # 1212)
Clayton J. Fitzsimmons (WV Bar # 10823)
Mark A. Colantonio (WV Bar #4238)
**FITZSIMMONS LAW FIRM PLLC**
1609 Warwood Avenue
Wheeling, WV 26003
Telephone: (304) 277-1700
Fax: (304) 277-1705

Paul J. Napoli
Hunter J. Shkolnik
Joseph L. Ciaccio
Shayna E. Sacks
Salvatore C. Badala
**NAPOLI SHKOLNIK, PLLC**
400 Broadhollow Road – Suite 350
Melville, New York 11747
(*Motions for Pro Hac Vice to be filed*)

Jonathan E. Turak (WV Bar # 3816)
**GOLD, KHOUREY & TURAK**
510 Tomlinson Ave.
Moundsville, WV 26041

Daniel J. Guida (WV Bar #4604)
**GUIDA LAW OFFICE**
3374 Main St.
Weirton, WV 26062

Samuel D. Madia (WV Bar # 10819)
Joseph F. Shaffer (WV Bar # 6805)
**SHAFFER MADIA LAW PLLC**
343 West Main Street
Clarksburg, WV 26301

***Counsel for Plaintiffs***

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
(WHEELING DIVISION)

| | |
|---|---|
| BROOKE COUNTY COMMISSION, <br> HANCOCK COUNTY COMMISSION, <br> HARRISON COUNTY COMMISSION, <br> LEWIS COUNTY COMMISSION, <br> MARSHALL COUNTY COMMISSION, <br> OHIO COUNTY COMMISSION, <br> TYLER COUNTY COMMISSION, and <br> WETZEL COUNTY COMMISSION, <br><br> Plaintiffs, <br> vs. <br><br> PURDUE PHARMA L.P.; PURDUE PHARMA INC.; THE PURDUE FREDERICK COMPANY, INC.; MARK RADCLIFFE; MARK ROSS; PATTY CARNES; TEVA PHARMACEUTICALS USA, INC.; CEPHALON, INC.; JANSSEN PHARMACEUTICALS, INC.; ORTHO-MCNEIL-JANSSEN PHARMACEUTICALS, INC. n/k/a Janssen Pharmaceuticals, Inc.; JANSSEN PHARMACEUTICA, INC. n/k/a Janssen Pharmaceuticals, Inc.; JOHNSON & JOHNSON; ENDO HEALTH SOLUTIONS INC.; ENDO PHARMACEUTICALS, INC.; ALLERGAN plc; ACTAVIS plc; ACTAVIS, INC.; ACTAVIS LLC; ACTAVIS PHARMA, INC.; WATSON PHARMACEUTICALS, INC.; WATSON PHARMA, INC.; WATSON LABORATORIES, INC.; MCKESSON CORPORATION; CARDINAL HEALTH, INC.; AMERISOURCEBERGEN DRUG CORPORATION; RITE AID OF MARYLAND, INC.; KROGER LIMITED PARTNERSHIP II; CVS INDIANA, L.L.C.; WAL-MART STORES EAST, LP; GOODWIN DRUG COMPANY; WEST VIRGINIA BOARD OF PHARMACY; DAVID POTTERS; EDITA P. MILAN, M.D.; TRESSIE MONTENE DUFFY, M.D.; EUGENIO ALDEA MENEZ, M.D.; SCOTT JAMES FEATHERS, D.P.M.; and AMY LYNN BEAVER, P.A.-C, <br> Defendants. | Civil Action No. 5:18-cv-9 <br> Civil Action No. 5:18-cv-10 <br> Civil Action No. 5:18-cv-11 <br> Civil Action No. 5:18-cv-12 <br> Civil Action No. 5:18-cv-13 <br> Civil Action No. 5:18-cv-14 <br> Civil Action No. 5:18-cv-15 <br> Civil Action No. 5:18-cv-16 <br><br><br> Judge John Preston Bailey |

## CERTIFICATE OF SERVICE

The undersigned counsel for Plaintiffs hereby certifies that on February 12, 2018, a true copy of the foregoing document was electronically filed with the Clerk of this Court using the CM/ECF system, who shall provide electronic notice of such filing to the counsel of record.

Respectfully Submitted,

**BROOKE COUNTY COMMISSION, HANCOCK COUNTY COMMISSION, HARRISON COUNTY COMMISSION, LEWIS COUNTY COMMISSION, MARSHALL COUNTY COMMISSION, OHIO COUNTY COMMISSION, TYLER COUNTY COMMISSION,** and **WETZEL COUNTY COMMISSION,** *Plaintiffs*

By: /s/ *Clayton J. Fitzsimmons*
Robert P. Fitzsimmons (WV Bar # 1212)
Clayton J. Fitzsimmons (WV Bar # 10823)
Mark A. Colantonio (WV Bar #4238)
**FITZSIMMONS LAW FIRM PLLC**
1609 Warwood Avenue
Wheeling, WV 26003
Telephone: (304) 277-1700
Fax: (304) 277-1705

Paul J. Napoli
Hunter J. Shkolnik
Joseph L. Ciaccio
Shayna E. Sacks
Salvatore C. Badala
**NAPOLI SHKOLNIK, PLLC**
400 Broadhollow Road – Suite 350
Melville, New York 11747
(*Motions for Pro Hac Vice to be filed*)

Jonathan E. Turak (WV Bar # 3816)
**GOLD, KHOUREY & TURAK**
510 Tomlinson Ave.
Moundsville, WV 26041

Daniel J. Guida (WV Bar #4604)
**GUIDA LAW OFFICE**
3374 Main St.
Weirton, WV 26062

Joseph F. Shaffer (WV Bar # 6805)
Samuel D. Madia (WV Bar # 10819)
**SHAFFER MADIA LAW PLLC**
343 West Main Street
Clarksburg, WV 26301

*Counsel for Plaintiffs*